THE UNITED NEW JERSEY RAILROAD AND CANAL COMPANY et al.

*v.*

THE CRUCIBLE STEEL COMPANY et al.

[Decided August 5th, 1915.]

1. Equity has jurisdiction to enforce by injunction the private rights of way arising to grantees from dedications of streets or roads, or arising from a dedication of a street or road by express covenant, and rights of way as between the parties to an agreement, arising as matters of contract or estoppel under contract.

2. A covenant and agreement between owners "hereby dedicating" a strip sixty feet wide for a road might be considered as an actual grant of an easement over the land then owned by the respective parties, and not merely a covenant.

3. The owners of land in a tract lying east of and detached from F. street, which ran north and south, but who then owned no land abutting on C. street from F. street east to the boundary line of the tract, entered into a written agreement, reciting that there were no public streets on the several tracts owned by the parties, and that certain parties claimed rights of way over the property, and that it was for the interest of all parties that some recognized way to and through such property be established, and that all claim to private rights of way therein be extinguished, and providing that, in consideration of the premises, and of a consideration by each to each paid, they covenanted and agreed with the others, and with each of them, that a strip sixty feet

wide, an extension of C. street easterly across the land of the parties, be dedicated as a road, such strip beginning east of F. street at the end of C. street as laid out on a certain map, and running easterly between the north and south lines of C. street produced across lands of the parties to the easterly boundary of the tract designating C. street, which crossed F. street at right angles, as sixty feet wide, and by which the parties claiming rights of way released and surrendered them, and authorizing any party to fill and grade the road.—*Held*, on bill to establish the right of access to land over C. street from F. street and to compel the removal of obstructions, that the parties intended to establish some way "to" and "through" the lands, and that the agreement estopped all parties from denying that C. street, as an extension east of F. street to the boundary of the lands, was a way to the lands in which the strip was dedicated.

4. As to a right of way as established by agreement over a part of a street extending to a dedicated strip in the lands of the parties, the right to grade such part of the street, if necessary for the use of the lands of the parties through which the strip was dedicated, would be the ordinary and recognized right of a dominant owner, who must keep the way in repair at his own expense, and may enter upon the servient tenement for that purpose.

5. Defendants, who had obstructed the right of way coincident with a public street, established by a written covenant and agreement, as against the parties thereto, would have no right to continue the obstruction on the ground that they also obstructed the public street.

6. It is actionable and a misfeasance for the grantor of an easement to subsequently willfully annul or avoid his own grant by obstructing its use.

7. For obstruction of a way by others, but with the knowledge and assent of the servient owner, the dominant owner has a remedy against the servient owner.

8. Complainants in an action to enjoin obstruction of a right of access to their lands over C. street, east of F. street, who, with defendant, had by covenant or agreement dedicated a sixty-foot strip on their lands in a tract east of and detached from F. street, and, by contract or estoppel under contract, a way to their lands by an extension of C. street eastward, after the conveyance to a subsidiary of defendant of land abutting on C. street, from F. street east to the boundary line of the tract, conveyed all of their lands north of the sixty-foot strip or road, retaining the lands south of the strip, by deeds recognizing that, as between the parties to the agreement, C. street was a continuous street from F. street to the defendant's land.—*Held*, that the defendant, by accepting the deed with its express references to C. street as a street from F. street, affirmed the agreement, and was estopped from denying that C. street, east of F. street, was a public street, and prevented from obstructing C. street where it crossed the easterly line of F. street.

9. Relief by injunction against the obstruction of a public street cannot be granted, without proof that it has been accepted as a public street, with obligation to repair it for public passage.

*85 N. J. Eq.*    United N, J. R. & C. Co. *v.* Crucible Steel Co.

10. An owner, who has dedicated a street over his lands, is estopped from retracting his dedication; and the public right to appropriate the street dedicated, when required, can only be released by the legislature, or the municipality under its authority.

11. Until there is an acceptance of a dedicated street by some municipal act or public usage, the public acquires no rights therein and is subject to no duties by reason of the dedication.

12. Where there was no public usage of a part of a street over which vehicular travel was impracticable after another street crossing at right angles had been graded above it, a municipality's adoption of such part on a map for taxing purposes was not such an acceptance as to impose on it the duty of repairing it for public travel; nor did its proceedings to vacate under a legislative act imply an acceptance.

13. In an action by private owners to enjoin the obstruction of a public street, adopted as a recognized way in which the public right is fairly drawn in question, the public or the municipality must be a party.

---

Heard on bill, amended bill, answers and cross-bill, and replications and proofs.

On May 17th, 1901, four owners of land, in the town of Harrison (formerly called East Newark), entered into a written agreement for the purpose of dedicating as a road a strip of land sixty feet in width, running across their respective lands. The location of their lands and of this strip to be dedicated was, by recitals and covenants in the agreement, fixed with reference to one of the boundary lines (the most westerly) between two tracts then lying within the town, and called the Gilbert and Preston tracts, and by reference to two maps of these respective tracts, previously filed in county offices—the map of lots in the Gilbert tract, filed July 15th, 1852, in Hudson county, and of the Preston tract, filed July 14th, 1837, in Bergen county. The Gilbert tract is a very extensive one, located east and north of the bend of the Passaic river, opposite Newark, and extends into the town of Harrison, north and east, over seven streets running north and south (numbered on the Gilbert map First street to Seventh street), and thirteen streets (or portions thereof) running east and west, and the Gilbert tract comprises over eighty blocks laid off in lots. Fourth street on this map runs from the Passaic river north for thirteen blocks through the tract, and was at the time of the agreement, and is now, the avenue of

travel connecting Newark, by means of the Jackson street bridge, with the southern and central parts of Harrison. The strip dedicated was described in the agreement as

"a strip of land sixty feet in width, an extension of Cumberland street easterly across the said lands of the parties hereto, the strip of land so dedicated beginning east of Fourth street, at the end of Cumberland street as laid out on the Gilbert map, and in the aforesaid dividing line between the Preston tract and the Gilbert tract, and running thence easterly between the northerly and southerly lines of Cumberland street produced across lands of the parties hereto, to the middle of the ditch which forms the easterly boundary of the said land of the party of the fourth part (Draper). Cumberland street, of which the land above described is an extension, is shown on the map of the Gilbert tract referred to, and on the official map of the town of Harrison, made by Young & Bowie, surveyors. It is sixty feet in width and crosses Fourth street at right angles extending easterly to the said boundary line of the Gilbert and Preston tract; the northeast corner of Fourth and Cumberland streets is two thousand and twenty feet southerly from New Jersey Railroad avenue. The distance from Fourth street along the northerly line of Cumberland street to the boundary line of the Preston tract is shown differently on different maps."

On the Gilbert map Cumberland street extended east of the Gilbert tract to Seventh street, and partly over lands not owned by Gilbert, but which were included in the map of the Preston tract previously filed. On this Preston map, also, the streets as laid out extended west over the Gilbert tract lands, and each of these two maps showed a connected system of streets over the two adjoining tracts running north and south as well as east and west. Whether these streets, apparently connecting on both the maps, could be located in fact as continuing connected streets does not appear, but the location of a connecting system of streets on both maps may be important.

On the town of Harrison map, referred to in the agreement, Cumberland street extended east of Fourth street, but only to the boundary line of the Gilbert and Preston tracts; and the town official maps made later seem to have substantially adopted the line of the streets as laid down on the Gilbert map. The extensions of the streets from the Gilbert tract over the Preston tract do not appear on the town maps of 1901, and no doubt for the reason that all the streets as laid out on this Preston map

were vacated after the Gilbert map was filed and before the agreement of 1901. On August 14th, 1888, an ordinance was passed vacating Cumberland street between Fifth and Sixth streets, a portion of this street which was included in the Preston map, and on October 1st, 1895, an omnibus vacating ordinance was passed, by which "all the streets as laid out on the Preston map" were vacated. This latter ordinance had the effect of vacating Cumberland street east of Fourth street from the boundary. line between the Gilbert and Preston tracts to Fifth street and from Sixth street eastward, so that the official map of the town referred to in the agreement for designating Cumberland street, which seems to have been made after these vacations of these portions of Cumberland street east of Fourth street, shows Cumberland street running east from Fourth and terminating at the boundary line.

At the time of the agreement, and by its terms, Cumberland street was accepted by the parties thereto as then terminating at the boundary line of the Gilbert and Preston tracts.

Starting from the boundary line, the lands of the complainant, the party of the first part to the agreement, came first and extended both north and south of Cumberland street extended, a distance of about one thousand two hundred feet from the boundary line, to near Seventh street, where Cumberland street or its extension reached the lands of the Young executors, party of the third part, and running across them reached the Draper estate, party of the fourth part, which it crossed for a distance of about seven hundred feet. The Crucible Steel Company, party of the second part, were the owners of land included in the Gilbert tract, including a part thereof which, according to the Gilbert map, and, in fact, extended across a detached portion of Cumberland street, which portion as laid out on this map began about six hundred feet east of the boundary line and ran between Fifth and Sixth streets. This land of the Crucible Steel Company abutting on the detached portion of Cumberland street, on the Gilbert map, as well as on Cumberland street as extended by the agreement, is a projection across the street into the lands of the complainants, which were then both east and west of it.

The object and purpose of the parties in making this agreement further appears by the recitals in the paper itself and by its covenants and releases. The agreement first recited that there were no public streets or highways on the several tracts owned by the parties, and that the Crucible Steel Company and the executors of Henry Young (the predecessors in title of the defendant Harrison Land Company.) and Ruth Dana Draper, devisee of William H. Draper, claimed rights of way over property of the complainant embraced in the Preston tract; and then, secondly, recited that

"it is for the interest of all the parties hereto that some recognized way to and through such property be established, and that all claims of parties herein to private rights of way over such properties, or any of them, be extinguished."

Then

"in consideration of the premises, and of the sum of one dollar by each to each paid, the parties do hereby covenant and agree each with the others and with each of them, that a strip of land sixty feet in width, an extension of Cumberland street easterly across the lands of the parties hereto, be and the same is hereby appropriated as a road, the strip of land so dedicated beginning east of Fourth street at the end of Cumberland street as laid out on the Gilbert map and in the aforesaid dividing line between the Preston tract and the Gilbert tract, and running thence easterly,"

&c., as above recited.

After this covenant and agreement of dedication, the parties of the second, third and fourth parts,

"for the consideration aforesaid, further released and surrendered to the party of the first part all rights of way over the Preston tract, or any part of it, arising from any source whatever, which they had or claimed to have."

At the time of the execution of the agreement Cumberland street east of Fourth street was not graded or fit for use for vehicular traffic, nor does it appear that it had ever been so used previously, and from a point about four hundred feet east of Fourth street, the land was low meadow or marshy land lying some feet below the upland, and required filling. The complainant the

United New Jersey railroad company then owned a large tract lying on both sides of the proposed extension east of the boundary line extending from beyond Middlesex street on the north to the river, and east as far as Seventh street. This tract had been purchased in connection with the development of the railroad and transportation business by itself or its lessees, the Pennsylvania Railroad Company, and the portion lying south of Cumberland street extended was specially intended for the purpose of freight yards, and access to this tract and over Cumberland street from Fourth street is essential to the development and use of this land for their purposes. Young's executors (now the Harrison Land Company) owned from the complainant's line between Sixth and Seventh streets, east to the Draper line, also a large tract of meadow land. Upon the execution of the agreement, and by reason of the releases therein contained, there was no access by any streets, highways or way to the lands of the Young estate, except by the dedicated road. These lands also require filling for development or use, and for this purpose access from Fourth street by Cumberland street is necessary.

The defendant the Crucible Steel Company, as above stated, then owned land formerly part of the Gilbert tract, a small portion of which, between Fifth and Sixth streets on the map, was within the lines of the proposed extension of Cumberland street, and their execution of the agreement was therefore necessary for the purpose of dedicating the proposed road. As to the filling and grading of the extension, the agreement provides:

"It is further agreed that any of the parties hereto may at any time, but without expense to the others, or to any of them, fill in and grade the said road, or any part of it, and this agreement shall bind the successors, heirs, executors and assigns of the respective parties."

It is objected that the agreement of dedication and release made by the executors of Young does not appear to be within their powers, under the will, and that as to the Harrison Land Company, their grantees, the agreement is not effective, but there is no substance in this objection, for the reason that at the time of the agreement the executors of Young held the absolute fee-simple to their portion of the lands in question, by purchase

under foreclosure of a mortgage given to their testator. The proceeds of sale of the lands and their control and disposition of the lands might be subject to question by any of the beneficiaries, but they held the legal title in fee-simple, and the executors, as well as the beneficiaries, subsequently united in a deed dated May 20th, 1904, conveying the lands to the Harrison Land Company, who, as the grantees and assigns of the Young executors, are entitled to the benefit of the agreement. At the time of the execution of the agreement of 1901, none of the parties thereto owned any of the land abutting on Cumberland street from Fourth street east to the boundary line. Subsequent to the agreement, and by deed of February 4th, 1907, the defendant Hudson Railroad and Transportation Company acquired title from John R. Grimm to the lots in block 80 on the north side of Cumberland street, and also in block 83 on the south. This deed conveyed the lots by express reference to the Gilbert map, but described only by block and lot numbers, and did not expressly refer to streets. By another deed, dated January 15th, 1910, George L. Blake and wife conveyed to the Hudson Railroad and Transportation Company "that part of Cumberland street lying between the easterly side of Fourth street and the easterly boundary of the East Newark (the Gilbert) tract and blocks 80 and 83 on the Gilbert map," and it was declared to be the intention of the parties to convey all right, title and interest, if any, in and to Cumberland street.

The Crucible Steel Company is engaged in the manufacture of steel on an extensive scale in Harrison, its works and grounds occupying a large part of the land between Fifth and Sixth streets on the Gilbert map, and from Cumberland street for six or seven blocks to the north. The Hudson Railroad and Transportation Company was incorporated for the purpose of accommodating its business and for use in connection therewith, and it has no other business. It is claimed that the Crucible Steel Company controls this railroad company and is responsible for its acts, alleged to be in violation of the agreement.

The Crucible Steel Company desiring, for the purposes of the extension of its works, to vacate streets abutting on its property on Fourth, Fifth and Sixth streets, including *Cumberland* street,

applied to the common council for the vacation of these streets, offering to give $8,000 therefor, upon receiving a quit-claim deed on all the property named. Thereupon the common council gave notice of intention to vacate Cumberland street east of Fourth street two hundred and thirty-six seventy-two hundredths ·feet measured along the centre line (the easterly boundary, according to the city map), subject, however, to the agreement of 1901. Application to enjoin such action of the council was made by the Harrison Land Company, but this was denied (*82 N. J. Eq. 414*), but, so far as appears, no further proceedings for vacation have been taken and the status of Cumberland street east of Fourth street to the boundary line, if it has been accepted as a public street, has not been legally changed.

The complainants and the Harrison Land Company desiring now to fill up and improve their lands, have given licenses to do so to Booth & Flynn Company, Limited, a contracting company engaged in sewer construction, which has prepared and intends to use the lands for filling purposes in connection with their own work. For this use, access to the lands of the railroad company and of the land company over Cumberland street from Fourth street is necessary for both these parties. To the land company such access has been necessary since the agreement releasing its rights ·of way, and although at the time of the agreement the railroad company might, by devious and inconvenient ways, have had such access over its own lands included in the Preston tract, the necessary development of these lands since the agreement in the operation of its railroad has so far appropriated these to the purposes of transportation that there now remains to it no access except by Cumberland street. Access to the dedicated strip of road, the extension of Cumberland street, has been obstructed by a barrier erected not on the extension but across Cumberland street where it crosses Fourth street and on the easterly line of Fourth street. This barrier is a very formidable character and cuts off access to the entire width of Cumberland street. It was erected by the Crucible Steel Company, and upon the lands to which the Hudson transportation company has the record legal title. As between the two companies, the expense of the erection was subsequently charged to the Hudson company. The mana-

ger of the Crucible Steel Company plant is a director of the Hudson transportation company and personally has control of the property of the latter company, and was connected with placing the obstruction by the Crucible Steel Company, and on behalf of the steel company, applied for the vacation of Cumberland street. The stock of the transportation company does not appear to be actually owned by the steel company, but all the officers of the transportation company are also officers of the steel company, and it has its office at Pittsburgh in the office of the steel company. The object of the bill of the complainants, and cross-bill of the land company, is to establish their right of access to their land over Cumberland street from Fourth street and to compel the removal of the obstruction. The land company relies on the agreement and the actions of the parties under it as the basis for its right to reach Fourth street through Cumberland street, but the complainants further rely on estoppels claimed to arise in their favor by subsequent deeds made by them to the Crucible Steel Company. After the conveyance to the Hudson Railroad and Transportation Company, in 1907, of the blocks north and south of Cumberland street, as shown on the Gilbert map, and in 1910 of the land within the lines of Cumberland street, as shown on this map, the complainants conveyed to the defendant Crucible Steel Company two tracts adjoining each other, both located on the north side of the extension of Cumberland street. The first tract was conveyed by deed of June 22d, 1910, in which the lot was described as

"beginning at a point at the intersection of the extended easterly line of Fifth street (sixty feet wide) with the northerly line of Cumberland street (sixty feet wide), as the said Cumberland street is extended by agreement dated May 17th, 1901, recorded," &c.

The third course of this description runs

"to a point in the northerly line of Cumberland street extended as aforesaid; thence along the said northerly line of said street extended, and by other land of the said United New Jersey Railroad and Canal Company north eighty-two degrees twenty-four minutes west two hundred and ninety-nine twenty-nine hundreths feet to the place of beginning."

CASES IN CHANCERY, 1915.  17

*85 N. J. Eq.*  United N. J. R. & C. Co. *v.* Crucible Steel Co.

The second tract adjoined the first tract on the west and was conveyed by deed dated November 13th, 1911. The description of this tract referred to the beginning point as being on the easterly line of the Gilbert tract on the Gilbert map of July 15th, 1852, filed in Hudson county, and as

"being on the north line of Cumberland street as laid out on said map and mentioned in the agreement between the parties to the deed and others, dated May 17th, 1901, recorded, &c., and said plant being at the distance of two hundred and forty-five three-hundreths feet measured eastwardly along the northerly line of the said Cumberland street from its intersection with the easterly line of Fourth street."

The third course of this description ran to the westerly line of land conveyed to the Crucible Steel Company by deed of June 22d, 1910, and the fourth, along this land

"to a point in the northerly line of a strip of land sixty feet wide dedicated and appropriated as a road by the above-recited agreement dated May 17th, 1901, and thence westwardly along the said northerly line north eighty-two degrees twenty-four minutes west three hundred and fourteen ninety-seven hundredths feet to the place of beginning."

These two deeds, taken together, conveyed to the Crucible Steel Company all of the lands of the complainants lying north of the strip dedicated as a road and left in the complainants as affected by the agreement the lands lying south of the strip dedicated and being the lands which complainants have licensed the contracting company to fill, and access to which over Cumberland street east of Fourth street has been cut off by the defendant the Crucible Steel Company.

The Harrison Land Company, as a party to the agreement of May, 1901, was, by an amendment, made defendant to the bill. By its answer it admits substantially the complainants' rights as alleged in their bill, and by cross-bill prays for the relief of removing the obstructions to Cumberland street placed there by the other defendants, the Crucible Steel Company and the Hudson company, which it is alleged to own and control. These defendants, in their answer to the bill and cross-bill, deny generally that complainants or the Harrison Land Company by reason of the agreement have access from Fourth street over Cum-

berland street, and also that Cumberland street east of Fourth is a public street, or has ever been accepted as such, and they also insist that the remedy, if any, is at law.

*Mr. James B. Vredenburgh,* for the complainants (*Messrs. Vredenburgh, Wall & Carey,* solicitors).

*Mr. Edward A. Day,* for the defendant Harrison Land Company. (*Messrs. Edward A. & William T. Day,* solicitors).

*Mr. George H. Peirce,* for the defendant Crucible Steel Company (*Messrs. Peirce & Hoover,* solicitors).

*Mr. J. Henry Harrison,* for the defendant Booth & Flynn Company, Ltd.

EMERY, V. C. (after statement).

The substantial question of law to be decided is the right of the complainants and of the defendant land company as against the defendant Crucible company under the agreement of 1901, to access over that portion of Cumberland street east of Fourth street, as laid down on the Gilbert map, to the "strip of land sixty feet in width, an extension of Cumberland street," dedicated as a road across their respective lands. An objection was made in the answer of the steel company and the Hudson Railroad and Transportation Company, and repeated at the hearing, to the jurisdiction of this court to determine this disputed right, as being purely a legal right to be settled at law, and for the violation of which the remedy was legal and not equitable. The equitable jurisdiction to enforce by injunction the private rights of way arising to grantees from dedications of streets or roads is settled. *Lennig* v. *Ocean City Association* (*Court of Errors and Appeals, 1886*), *41 N. J. Eq. 606; Herold* v. *Columbia Investment and Real Estate Co.* (*Court of Errors and Appeals, 1907*), *72 N. J. Eq. 857, 861.* Injunctions were granted in these cases on covenants for rights of passage in the streets, implied by reason of conveyances referring to the streets designated on the map. A right arising from a dedication of a street or road by express

covenant is entitled to a similar equitable protection. And there is here an additional ground for equitable jurisdiction. So far as relates to the dedicated strip of sixty feet, the covenant and agreement "hereby dedicating" it as a road may be considered as an actual grant of an easement over the lands then owned by the respective parties, and not merely a covenant, if such construction is necessary to carry out the intention of the parties. *Godd. Easem. (Bennett's ed.) 108; Trustees* v. *Lynch, 70 N. Y. 440, 448; Brewer* v. *Marshall, 18 N. J. Eq. 337, 345; S. C. on appeal, 19 N. J. Eq. 537,* approving opinion of chancellor on this point (at *p. 542*); *10 Am. & Eng. Encycl. L. (2d ed.) 413.* But so far as relates to any rights on Cumberland street itself from Fourth street for access to the extension, these rights cannot be in the nature of actual grants of easements over Cumberland street, because neither the steel company nor any other of the parties owned lands abutting on that portion of Cumberland street upon which the easement could be actually imposed by grant. Any rights over that portion of Cumberland street for access to the extension must, therefore, as between the parties to the agreement, arise as matters purely of contract or estoppel under contract, and not of estate granted, and specific performance by injunction of such contract rights, if any, is the only adequate remedy. The obstruction of Cumberland street east of Fourth so plainly destroys or affects the existence or value of the road dedicated over the extension, that if such obstruction is a violation of contract rights arising under the agreement, equitable relief by injunction is the appropriate remedy.

As to this portion of Cumberland street itself, the agreement by its recitals and covenants shows that the parties to the agreement intended that this portion should be considered as a way given by a public street for access to the dedicated strip. The first recital refers to the non-existence of *public* streets or highways on their several tracts, and the claim by all of the other parties of rights of way over the complainants' lands embraced in the Preston tract. These private rights of way were claimed as arising partly by reason of the dedications of streets on the Preston tract, by the maps and otherwise, and as existing after

the vacation of these streets. As appears by the record in the suit brought by the Young estate against the Pennsylvania Railroad Company, these claims of right of way relate to several streets laid out in the Preston tract other than Cumberland street. The *second* recital was most important as declaring the scope and purpose of the whole agreement, and, in my judgment, reached to the very point now in question. This recited that it was for the interest of all parties "that some recognized way *to* and through such properties be established, and that all claims of the parties to private ways over such properties, or any of them, be extinguished." As to the purpose and scope of the dedication, this recital shows an intention to establish "some recognized way *to*," as well as through their properties, and, in view of the actual releases of private ways subsequently made in the agreement itself, carrying out that purpose of the recital, the other declared purpose, viz., the establishment of a recognized way, must be considered either as a contract of the parties, that as between them a recognized way *to* the properties was established by the agreement, or as an estoppel against thereafter denying that the way *to* the properties established by the agreement was as between them a recognized way. If the recital has the effect of such estoppel arising out of the contract, the continued existence of the recognized *way to* the properties arising from estoppel may be protected, although none of the parties against whom the estoppel arises at the time of the agreement owned the lands to which the estoppel applies. In *Ocean City Hotel, &c., Co.* v. *Sooy (Court of Errors and Appeals, 1909)*, *77 N. J. Law 527*, a conveyance delineating a street and referring to it as a boundary, while inoperative as a dedication because the grantor did not own the street, was operative between the parties as an estoppel to deny the existence of the street.

The covenant of dedication following this recital not only did not limit or restrict this declaration of its purpose, but confirmed, and, I think, adopted it, and by the following provisions: *First.* The dedication was expressed to be "in consideration of the premises," thereby including and reaffirming the general purpose of the previous recital, as establishing a *way to* the properties. *Second.* The express and formal dedication itself in the

agreement is, "a strip of land sixty feet in width, *an extension of Cumberland street,* across the lands of the parties be and the same is hereby dedicated and appropriated as a road."

There is in the dedication itself no further express indication of its purpose, but the purposes declared in the recital, in consideration of which the dedication was made, must be considered as operative, and as defining between the parties a special purpose of the dedication, viz., to establish a recognized way *to* the premises, and the dedication itself "as an extension of Cumberland street," was an express reference to a recognized way, and the only recognized way which led *to* the premises *through* which the dedicated strip ran.

I consider that by the dedicating clause, read in connection, as it must be, with the recital, which was the declaration of its purpose, the dedication as made should be taken, so far as the parties are concerned, as if made in this form, viz.:

"A strip of land sixty feet in width, an extension of Cumberland street easterly across the said lands of the parties hereto, be and the same is hereby dedicated and appropriated as a road (to the end), that some recognized way to and through such properties may be established."

The form or place in this agreement in which its purpose appears is immaterial, and where the purpose, as here, plainly appears by recital, the terms of the dedication, whether it be considered a grant of an easement over the land they owned or as a contract, must be construed as affected by it. The references in the agreement to Cumberland street in the description of the strip following the dedication, further confirm this construction of the declaration, and show that for the purposes of the agreement and as between the parties, Cumberland street east of Fourth to the boundary line of the Gilbert and Preston tracts is to be the recognized way *to* the properties. The strip dedicated begins east of Fourth street at the end of Cumberland street as laid out on the Gilbert map; thence it runs "easterly between the northerly and southerly lines of *Cumberland street produced across lands* of the parties." Then, as specially indicating the status of Cumberland street and fixing its lines east of Fourth street for the purposes of the agreement, it is said that

"Cumberland street, of which the land above described (the sixty-foot strip) is an extension, is shown on the Gilbert map and the official town of Harrison map." * * * It is sixty feet in width and crosses Fourth street at right angles "extending easterly to the boundary line of the Gilbert and Preston tracts." The definite location of Fourth and Cumberland streets, for the purposes of this agreement, is fixed by reference to the distance of their northeast corner two thousand and twenty feet from a fixed monument, New Jersey Railroad avenue, on the north. These descriptions and locations show that the parties for the purpose of establishing some recognized way *to* and *through* their lands adopted a single *recognized* way. The recognition of this portion of Cumberland street in fixed location and lines as an existing public street as far as the boundary, and the explicit extension of the street by dedication over their lands, established for every one of the parties this "single recognized way to and through" their properties, which it was their object to establish. And it is only by such recognition of Cumberland street, as a way in connection with the dedication, that such way could be established by the dedication. At the time of the execution of the agreement, Cumberland street east of Fourth, as laid down on either of these maps, was not graded, nor could it, in its then condition, be used at all for vehicular travel. But the right of way over this portion of Cumberland street, if it exist by estoppel, or otherwise, under the agreement, must, as it now seems to me, for the purposes of its exercise and enjoyment, and so far as these parties are concerned, be considered as if it stood on the legal basis of easement granted on their own lands in the dedicated strip. On this strip the agreement expressly provided for filling and grading, but this did not extend to Cumberland street. As to the way established by the agreement over this portion of this street, the right to grade it, if necessary for the use of the lands of the parties through which the road was dedicated, the right to enter, repair and grade, as between the parties, must be the ordinary and recognized right of a dominant owner. He must keep the way in repair at his own expense and may enter on the servient

tenement for that purpose. *Godd. Easem. (Bennett's ed.) 346.* Whether this portion of the street has been accepted by the town as a public street admits of question. The town official map affords some evidence of acceptance. *Vreeland* v. *Torrey (Chancellor Runyon, 1881), 34 N. J. Eq. 312, 313;* but in view of the act of 1888 *(P. L. 1888 p. 178; 4 Comp. Stat. .p. 4604)*, authorizing the vacation of dedicated streets, whether accepted or not, the subsequent vacation or proceedings to this part of Cumberland street do not of themselves imply acceptance. No other acts of the town are shown as bearing on the question of acceptance of this portion as a public street, and apparently the town authorities, by allowing the continuance of the barrier, are acting as if this part of the street were not public. And certainly the defendants, who have obstructed the way established by the agreement, can, as against the parties, have no right to continue them, merely on the ground that in doing so they also obstruct the public street which was the way established.

This agreement, in my judgment, estops all the parties dedicating the road over their lands as an extension of Cumberland street with the intention of establishing a recognized way to their lands from Fourth street, from denying that Cumberland street east of Fourth street to the boundary line of the tracts, and for the whole width thereof, is a way to the properties over which the strip was dedicated as an extension.

Should this construction of the agreement, giving rights of way by estoppel over Cumberland street exist to the boundary, not be correct, and should it be considered that the agreement of dedication gave rights only over the dedicated strip, it would still seem that the complainants and the land company are not barred from equitable relief. For it is actionable and a misfeasance for the grantor of an easement to subsequently willfully annul or avoid his own grant by obstructing its use. *Godd. Easem. (Bennett's ed.) 443.* The obstruction in this case practically destroys and annuls the dedication of the strip itself. And for obstructions of a way made by others, but with the knowledge and assent of the servient owner, the dominant owner has a remedy against the servient owner. *Ibid.,* citing *Dennis* v. *Sipperly, 17 Hun 69.*

The complainants, in my judgment, have additional rights by estoppel against the steel company, by reason of the subsequent deeds to that company. These deeds (two in number) together conveyed all of the complainants' lands over which the sixty-foot strip was dedicated, lying between the easterly boundary of the Gilbert and Preston tracts, and the steel company's own lands lying within the dedicated road, and abutting about one thousand two hundred feet on the northerly side of the extension. These lands of the steel company were part of the Gilbert tract, and on that map appeared as included in a portion of Cumberland street detached from the other portions of that street. But, although thus detached, the grantees of this detached portion, and of the lands abutting thereon on the north, were as grantees of the Gilbert tract, at the time of the agreement, entitled to the benefit of Cumberland street, as laid out on the Gilbert map, including especially the portion thereof east of Fourth, and to their easement over this portion by reason of this dedication by this map. By the two conveyances to the steel company, it became the owner of the lands connecting the detached portions of Cumberland street as dedicated on the map, and thus, as owner of the lands in the dedicated strip, and which were covered by Cumberland street on the Gilbert map, became entitled, under the Gilbert title and the agreement of 1901, to private rights of passage from its lands to Fourth street, and it has these rights of passage to Fourth street superior to the Hudson transportation company's title, which was subject to all the dedications by the Gilbert map. By these deeds this valuable private right of continuous passage from its lands abutting on the extension of Cumberland street to Fourth street became fixed, and this circumstance is entitled to weight in considering the effect of these subsequent deeds. The first deed, dated June 22d, 1910, conveying about three hundred feet on the northerly line of the extension, was described as beginning at a point in "the northerly line of Cumberland street (sixty feet wide) as the said Cumberland street is extended by the agreement of May 17th, 1901;" the third course runs "to a point in the northerly line of Cumberland street extended as aforesaid; thence along the said northerly line of said street extended to the beginning."

The second tract, conveyed November 13th, 1911, is described as beginning at a point

"in the north line of Cumberland street as laid out on said (Gilbert) map and mentioned in the agreement of May 17th, 1901, which point was two hundred and forty-five three-hundredths feet measured eastwardly along the northerly line of the said Cumberland street from its intersection with the easterly line of Fourth street."

These deeds plainly proceed on the basis that, as between the parties thereto, and for the purposes thereof, Cumberland street is a continuous street from Fourth street to the lands of the steel company included in the agreement of 1901. The grantors manifestly would be estopped from denying that the grantees had the right of way from the premises conveyed over this portion of Cumberland street, and the grantees by the acceptance of the deed with its express references to Cumberland street as a street from Fourth street and over the lands conveyed, affirmed the agreement of 1901, as intended to make of Cumberland street east from Fourth a public street to be extended. They are also, in my judgment, estopped from denying this effect of the deed and its acceptance, and that Cumberland street east of Fourth street is a public street.

In the absence of a direct covenant that Cumberland street east of Fourth was a public street and should be continued as such, the reference to it, in the agreement or in the deeds, by the recitals or description, as a public street, intended for the purposes of the agreement or deeds to be part of a perpetual continuous recognized way to their lands across which the strip was dedicated, such mutual covenant by implication cannot be held to have arisen between the parties, making each liable to the other for damages as on a covenant, either on the non-existence or the subsequent vacation of this portion of the street. These references, by recitals or description, should not be held to operate further than as estoppels arising under the agreement and deeds as to all the parties, and those claiming under them, to deny the existence of this portion as a street or way to the dedicated strip, or in any manner interfering to obstruct the other parties to the agreement in the use of it for the purposes

of the agreement. This distinction between estoppel and implied covenant is taken by some courts, even where the lands as to which the estoppel is enforced belong to the grantor. *8 Am. & Eng. Encycl. L. (2d ed.) 63; Howe v. Alger (Mass., 1862), 4 Allen 206, 211.* And where the lands are not owned by the grantor or covenantor, the right to relief must clearly, I think, be based on estoppel. This estoppel will ·in the present case prevent the steel company from doing or alleging anything contrary to the tenor and effect of the agreement and deeds in this respect, and from doing anything, either itself or through others over whose action in reference thereto it has control, to obstruct the enjoyment of the street or way for the purposes of the agreement and deeds.

The bill is filed to protect and enforce complainants' rights arising and claimed under the agreement and deeds, but at the hearing they also claimed a right to a removal of the obstruction, by mandatory injunction, upon the ground that it was the obstruction of a public way from which they suffered special loss or damage, and that although the common nuisance was indictable they were, by reason of this special damage, entitled to remedy by action, including relief by injunction. The New Jersey decisions relied on to support the claim are cases in the law courts in which such actions for special damages were sustained. In *Stevens v. Paterson and Newark Railroad Co. (Court of Errors and Appeals, 1870), 34 N. J. Law 532, 553,* the access of a riparian owner to a navigable river was obstructed by the construction of a railroad on the shore belonging to the state and without any authority from the state. In *Ryerson v. Morris Canal and Banking Co. (Supreme Court, 1903), 69 N. J. Law 505,* the owner of three different farms located at considerable distances from each other, on the same highway, was held, on the facts stated in the declaration, to have sustained a special and peculiar damage in passing from one farm to the others, by the non-repair of a bridge on the highway, and to be entitled to an action for the non-repair if defendants were bound to repair. Mr. Justice Pitney, delivering the opinion of the court, says (at *p. 505*) that "in order to maintain the action plaintiff

must have sustained some special damage peculiar to himself, beyond that suffered by the rest of the public entitled to use the way, and that it is sometimes said that the plaintiff's injury should be, not only greater in amount, but different in kind from that suffered by citizens in general." In decisions previous to this latter case, the right to relief by injunction for removal of nuisances to highways was denied to complainants who were abutting owners and whose access to the highway was cut off, upon the ground that the right to the highway which complainant enjoyed was only a right as one of the public, and that his injury was not different in character from that which every other citizen sustained. *H. B. Anthony Shoe Co.* v. *West Jersey Railroad Co.* (*Mr. Justice Van Syckel, Court of Errors and Appeals, 1898*), *57 N. J. Eq. 607, 617,* and Mr. Justice Garrison (concurring) says (at *p. 619*) that it is not seen how the public right can be drawn in question in a suit to which no one representing the public or even the municipality is a party. In *Young* v. *Pennsylvania Railroad Co.* (*Supreme Court, 1905*), *72 N. J. Law 94,* this decision of the appellate court was held to establish the principle (suggested by Mr. Justice Pitney in the earlier *Ryerson Case, supra,* as the ground of some decisions) that the injury must be different in character from that of the public, in order to be redressed by a private action for damages, and such right was denied to the plaintiff where a street dedicated by the defendant had been obstructed by them. In view of the later decisions, both in the court of errors and appeals and the supreme court, the relief by injunction against obstruction of a public street cannot be granted in this case for two reasons—*first,* because the proof that Cumberland street east of Fourth has been accepted by the municipality as a public street which it is obliged to repair for public passage is not sufficient. Where an owner has dedicated a street over his lands, he is estopped from retracting his dedication, and the public right at any time to appropriate the street dedicated, when required, can only be released by the legislature, or the municipality under its authority. *Hoboken Land and Improvement Co.* (*Court of Errors and Appeals, 1873*), *36 N. J. Law 540, 549; M'Andrews,*

*&c., Co.* v. *Camden (Court of Errors and Appeals, 1910), 78 N. J. Eq. 244, 248.* But until there is an acceptance of the street by some municipal act, or by public usage, the public acquire no rights therein, and is subject to no duties by reason of the dedication. *Ibid.* and *Atlantic and Suburban Railway Co.* v. *State Board (Supreme Court, 1910), 80 N. J. Law 83.* No public usage of this portion of Cumberland street has been shown, nor was vehicular travel ever practicable since Fourth street was graded above it. Under these circumstances, the adoption of this portion on the map for taxing or city purposes does not seem such an acceptance as to impose on it the duty of repair for public travel. Proceedings to vacate under the act of 1888 do not imply acceptance. In the *second* place, I am inclined to concur in the view of Messrs. Justices Garrison, Dixon and Collins, in the *Anthony Shoe Co. Case, supra, 57 N. J. Eq. 619,* that where public right is fairly drawn in question, and is to be decided, the public or the municipality must be a party to the proceeding. On an indictment or information by the attorney-general the public is the formal party asserting the right and the status of the street as a public street is settled finally against all parties. Whether if the town of Harrison had been made party defendant to this bill as uniting in or allowing the obstruction of a public street, the obstruction of a public street if denied could be tried and relief by injunction granted, is not a matter for decision.

The case is decided solely on the rights of complainants and the land company to injunction under the agreements and deeds, and the form of injunction will be settled.