MORRIS SELZ ET AL. v. CHIER M. PRESBURGER.

1.  The doctrine of *res judicata* is not applicable to the summary determination, by a subordinate tribunal, of motions which are merely incidental to a suit, when such determination cannot be reviewed in the appellate courts.

2.  The twenty-fifth section of the Habeas Corpus act (*Rev., p.* 468), does not authorize the court or justice before whom a writ of *habeas corpus* is returned, showing that the prisoner is detained by virtue of a legal *capias ad respondendum*, to examine into and decide upon the suffi-

ciency in fact of the proofs upon which the order for the *capias* was founded.

3. If the affidavits upon which an order for bail is made fairly present the question whether the case is one proper for a *capias*, then the determination of the judge or commissioner upon their sufficiency cannot be reviewed by means of the writ of *habeas corpus*.

On *habeas corpus*.

Argued at November Term, 1886, before Justices KNAPP and DIXON.

For the plaintiffs, *Cortlandt Parker*.

For the defendant, *Samuel Kalisch*.

The opinion of the court was delivered by

DIXON, J.  The defendant was arrested on a *capias* out of this court, at the suit of the plaintiffs, issued upon the order of a Supreme Court commissioner, who adjudged that the defendant had fraudulently contracted the debt sued for, and had assigned, removed and disposed of his property with intent to defraud his creditors.  Subsequently he applied to one of the justices of this court for a discharge, upon the ground that the affidavits on which the commissioner had made his order were insufficient.  The justice refused to discharge him ; thereupon he sued out a writ of *habeas corpus,* and the return thereto showing that he is detained by virtue of the *capias,* he prays a discharge upon the same ground as that on which he based his application to the justice.

The plaintiffs meet him with the preliminary objection that the determination of the justice is conclusive.

It seems, however, to be the better opinion that the doctrine of *res judicata* is not applicable to the summary determination, by a subordinate tribunal, of motions which are merely incidental, the decision of which, not being entered upon the record, cannot be reviewed in the appellate courts.  *Simson* v. *Hart,* 14 *Johns.* 62, 76 ; *Dickenson* v. *Gilliland,* 1 *Cow.* 481,

495; *Van Rensellaer* v. *Sheriff*, 1 *Cow.* 501; *Dollfus* v. *Frosh*, 5 *Hill* 493, *note a.*

In *Yates* v. *People*, 6 *Johns.* 337, Kent, C. J., expressed the conviction that in England the resolution of a court upon *habeas corpus* could not be made the subject of a writ of error. And in harmony with this view, and the rule that non-appealable orders are not conclusive, is the declaration of Baron Parke, in *Ex parte Partington*, 13 *M. & W.* 679, that a prisoner's having twice been refused his discharge on *habeas corpus* did not prevent a subsequent application for the same writ, since the defendant had " a right to the opinion of every court as to the propriety of his imprisonment." But after the New York Court of Errors had, in *Yates* v. *People, ubi supra*, held that a writ of error would lie to a decision on *habeas corpus*, it became the settled doctrine in that state that such a decision was *res judicata*, Senator Paige, in *Mercein* v. *People*, 25 *Wend.* 64, 100, announcing the rule to be : " Wherever a final adjudication of an inferior court,   *   *   * or of persons invested with power to decide on the property and rights of the citizen, is examinable by the Supreme Court, upon a writ of error or *certiorari*,   *   *   *   such final adjudication may be pleaded as *res adjudicata*, and is conclusive upon the parties in all future controversies relating to the same matter." In *Dwight* v. *St. John*, 25 *N. Y.* 203, the like conclusive force was ascribed to an order of the Supreme Court on a motion to cancel a judgment, upon the ground that the order was appealable.

In the case before us, the decision of the justice refusing to discharge the prisoner was rendered upon a motion merely incidental to the suit, and could not be subjected to review by any appellate proceeding. We therefore think it is not entitled to stand as *res judicata*, and that if the law has provided a method of bringing the same question under judicial review, its consideration should not be strictly precluded by that decision.

But can the question which the prisoner raises be considered upon *habeas corpus ?* The defendant insists that it can,

by virtue of the twenty-fifth section of the Habeas Corpus act, approved March 27th, 1874. *Rev., p.* 468. Prior to this statute, it is, I think, plain that the sufficiency of the affidavits upon which an order for bail, in an action founded upon contract, had been made, would not be considered on *habeas corpus.* That writ raised only the question whether the prisoner was legally in custody (*State* v. *Gray,* 8 *Vroom* 368), and when the warrant for the prisoner's detention was legal, that is, valid on its face and emanating from an authority having jurisdiction, the prisoner was legally in custody and could not be discharged on *habeas corpus.* *In re Sheriff of Middlesex,* 11 *Ad. & El.* 273 ; *Note in* 3 *Hill* 661 ; *People* v. *Liscomb,* 60 *N. Y.* 559 ; *Peltier* v. *Pennington,* 2 *Green* 312. Under the constitution and laws of this state, a *capias* issuing in an action *ex contractu* out of a superior court is legal, if it be supported by an order for bail made in conformity with the statute regulating imprisonment for debt. *State* v. *Dunn,* 1 *Dutcher* 214. Certainly this is true when the order is based upon affidavits which fairly present the question whether the case is one proper for a *capias ;* and although the court which granted the *habeas corpus* might have decided that question differently from the judge or commissioner making the order, the legality of the *capias* and of the imprisonment under it was not thereby impaired. *Peltier* v. *Pennington, ubi supra.*

We come, then, to a consideration of the effect of section 25 of the revised Habeas Corpus act. This section confers upon the court or justice to whom a writ of *habeas corpus* is returned, when it appears that the prisoner is in custody by virtue of civil process issued in any action founded on contract, the same power as was conferred by the supplement to the Practice act, approved March 13th, 1861 (*Pamph. L.* 312 ; *Rev., p.* 859, § 64), upon a judge of the court out of which a *capias* had issued in an action *ex contractu.* The terms in which authority is granted by the two enactments are substantially the same. They should, therefore, receive the same interpretation. But it is plain that the act of 1861 was not

designed to give the power of determining the sufficiency in fact of the proof upon which the order for bail was founded. That power had already been granted under section 83 of the Practice act of March 17th, 1855. *Pamph. L., p.* 288 ; *Rev., p.* 858, § 63. The purpose of the act of 1861 was to enable the defendant to controvert the plaintiff's *ex parte* proofs, and to enable the plaintiff to corroborate and supplement them by further evidence, and so to present to the court or judge, on the motion to discharge, a question quite different from that passed upon by the officer making the original order. This, likewise, must be held to be the object of the Habeas Corpus act. Such appears, on its face, to be its meaning, and we are precluded from finding in it the further implied design which the defendant suggests, by the fact that it is a mere transcript of the act of 1861, in which such an implication is plainly inadmissible. - We are therefore of opinion that we would have no right to discharge the prisoner, by virtue of this writ of *habeas corpus,* if we thought the affidavits on which he was held to bail were insufficient in fact.

But we may add that we do not think they are. Although containing many assertions which cannot be regarded as legitimate evidence, these affidavits do legally show that on October 24th, 1885, the defendant bought, on credit, in Chicago, over $5000 worth of merchandise, to be shipped to Colorado, where he·represented that he had a very profitable business ; that about $2300 worth of this merchandise he bought from the plaintiffs ; that the merchandise reached Colorado about November 24th ; that early in December the defendant's business in Colorado had passed into other hands, he himself had disappeared and could not be found by the plaintiffs till September, 1886, when he was discovered in Newark, New Jersey ; that he was then doing business under the style of " The London and Liverpool Clothing Company," and was passing, personally, by the name of Mendel Presburger, although the name by which he had contracted his debts was Chier M. Presburger. These circumstances justify the

inference that he fraudulently contracted his debt to the plaintiffs.

He should be remanded to custody under the *capias*.