THE FACTS.
A petition of James Mercer Davis of Toms River, Ocean county, was presented to the Chancellor, which averred that the petitioner was confined and restrained of his liberty by *Page 162 
Joseph L. Holman, sheriff of Ocean county, and that the pretense of such confinement or restraint was by virtue of certain bench warrants for arrest issued by the court of oyer and terminer of the county of Ocean, copies of which were thereto attached and made a part thereof; that the bench warrants were issued asmesne processes under and by virtue of two alleged indictments lately returned by an alleged grand jury of the county of Ocean, styling themselves the grand inquest of the April term, 1930, of the court of oyer and terminer of Ocean, copies of which indictments were annexed and made a part thereof; that on the opening day of the April term, 1930, of the oyer and terminer of Ocean county, a grand jury was duly summoned, sworn and organized and entered upon the discharge of its duties and continued to act as such until on or about the 25th of July, 1930, when eighteen members appeared before the court at Toms River, whereupon the Honorable Joseph L. Bodine, supreme court justice, in open court, discharged the grand jurors aforesaid, from further service, a copy of which session of the court was annexed thereto and made a part thereof; that on August 9th, 1930, the Honorable Joseph L. Bodine, justice of the supreme court, holding the court of oyer and terminer, made an order in open court revoking the discharge of the grand jury aforesaid, and reinstating them for the balance of the April term, 1930; that at that time and place fifteen members were actually present before the court, and a copy of the proceedings of the session was thereto annexed and made a part thereof; that after August 9th, 1930, and on or about September 15th, 1930, and one day before the expiration of the April term of such court, the alleged grand jury which had been discharged and reinstated as aforesaid, found and returned an alleged indictment against the petitioner, alleging malfeasance in office, a copy of which indictment was attached and made a part thereof; that on or about September 15th, 1930, there was entered in the court of oyer and terminer of Ocean a certain other order wherein and whereby it was provided that the term of such grand jury be extended until it should have announced to the court that it had finished its labors *Page 163 
and was ready to be discharged, and that the April term of such court be continued and not terminated at the close of that day's business; such order was made by Mr. Justice Bodine holding the oyer and terminer, and Arthur Gorman Gallagher, as judge of such oyer and terminer and of the quarter sessions of Ocean county; a copy of which order was attached and made a part thereof; that on September 16th, 1930, pursuant to the rules of the supreme court fixing the terms for holding the oyer and terminer and the court of quarter sessions for the county of Ocean, a grand jury for the September term (1930) of the oyer and terminer was summoned, impaneled, sworn and charged, and entered upon the discharge of its duties for the September term, which began on September 16th then instant; that on or about September 18th, 1930, the alleged grand jury, which had been discharged and reinstated as aforesaid, styling themselves the grand jury of the April term, 1930, of the court of oyer and terminer, found and returned an alleged indictment against the petitioner and Eli Newmark, charging them with having made and entered into a conspiracy; a copy of such indictment was annexed and made a part thereof.
The petitioner then averred and charged that the indictments and warrants by virtue of which he was arrested and deprived of his liberty, were illegal and void, and of no effect whatsoever, for the reasons (a) that the grand jury of the April term, 1930, was regularly discharged on July 25th, 1930, and thereupon ceased to be and to have any existence as a part of the court of oyer and terminer or to have any power as a grand jury of Ocean, or power to perform any of the duties or to exercise any of the powers and prerogatives of a grand jury, especially the power to find and return indictments; and the justices of the supreme court and the court of oyer and terminer are, after the discharge of such grand jury, without legal power, authority or jurisdiction to reinstate a grand jury and invest it with the powers which it had after it was summoned, sworn and organized and before its discharge; and that the attempt to reinstate the grand jury and reinvest it with the powers it had had before its discharge *Page 164 
was null and void, and of no effect; and that, consequently, any and all indictments upon a return by the said alleged grand jury, after July 25th, 1930, were null and void; (b) that the alleged order of the court of oyer and terminer, extending the term of the alleged grand jury and continuing the April term of such court after the close of September 15th, 1930, was invalid and void, because the justice and the court were without jurisdiction or power to make and enter the order; and, consequently, any indictments found and returned by that grand jury subsequent to September 15th, 1930, were invalid and void; (c) that the court of oyer and terminer, and its subordinate body, the grand jury, had no jurisdiction of the subject-matters contained in the indictments and of the persons therein named, and had no jurisdiction to find any indictment whatsoever or to return the same into court after July 25th, and subsequent to September 15th, 1930.
The petitioner also averred that he was unjustly restrained of his liberty by reason of the alleged indictments and warrants issued thereon and by virtue thereof, in that he had (a) been held to answer for an alleged criminal offense without a presentment or indictment by a grand jury, in violation of Art.I, § 9 of the Constitution of New Jersey; and (b) deprived of his liberty without due process of law, in violation of § 1 ofthe Fourteenth Amendment of the Constitution of the UnitedStates, and he prayed that the matter might be inquired into and an order made discharging him from further detention on account of the indictments and warrants aforesaid.
 LAW.
This is an appeal to the court of chancery to grant a writ ofhabeas corpus discharging the accused from restraint, upon the ground that that court has common law jurisdiction in habeascorpus matters as of right. And so it has.
The writ of habeas corpus ad subjiciendum is a common law writ, confirmed and regulated by statute, which did not create, but came in aid of, the jurisdiction. The writ issued *Page 165 
out of the court of chancery, king's bench, common pleas and exchequer in England. In re Thompson, 85 N.J. Eq. 22.
Allen, J., in his opinion in People v. Liscomb, 60 N.Y. 559,
took occasion to remark at p. 565, that the history of the writ (habeas corpus) is lost in antiquity; it was in use before Magna Charta, and came to us as a part of our inheritance from the mother country, and exists as a part of the common law of the state (New York); the statutes which have been passed in England from the time of Charles II (31 Car. 2, c.2), and in this state from the time of its first organization, have not been intended to detract from its force, but rather to add to its efficiency; the earlier statutes of this state did not profess to deal with or regulate the common law jurisdiction over this writ, which existed in the supreme court and court of chancery; that this writ cannot be abrogated, or its efficiency curtailed, by legislative action; cases within the relief afforded by habeas corpus at common law, cannot, until the people voluntarily surrender the right to this, the greatest of all writs, by an amendment of the organic law (of New York), be placed beyond its reach and remedial action; the privilege of the writ cannot even be temporarily suspended, except for the safety of the state, in cases of rebellion or invasion.
This is equally the law in New Jersey.
Thus it appears that the decisions in this state (In reThompson) and in New York (People v. Liscomb) run along parallel lines. In fact, that the writ is given by the common law and not by statute, and that chancery is fully invested with the common law jurisdiction, is settled beyond dispute.
The power of the chancellor to grant a writ of habeas corpus
was by the common law the power to issue the writ out of the court of chancery. In re Thompson, supra (at p. 235). It is a high prerogative writ. In re Thompson, supra (at p. 240);Peltier v. Pennington, 14 N.J. Law 312 (at p. 318); 3 Bl.Com. [*]131. By the phrase "high prerogative writ" is meant a writ issued, not as ordinary writs, of strict right, but at the discretion of the sovereign acting through that court, in which he is supposed to be personally present. *Page 166 In re Thompson, supra (at p. 241), citing Short Inform.
[*]223. The writ is one of right only when the applicant shows himself entitled to it, but it ought not to issue unless the court is satisfied that the case is a proper one, because it does not issue of strict right, but only on proper cause shown to the court. In re Thompson, supra (at p. 249), and authorities cited. Habeas corpus ought not to issue without the court be satisfied that the case is a proper one. The State v. Lyon,1 N.J. Law [*]403 (462). In this case Chetwood, J., remarked that the judge should be satisfied before the writ is allowed, and the court later; that neither of them ought to act without some probable cause being exhibited to raise at least a reasonable question as to the legality of the claim under which the applicant is detained; and Smith, J., said (at the same page), that there must have been some good ground exhibited to the judge who allowed this writ or unquestionably he would not have done it.
In the case of Peltier v. Pennington, supra, Hornblower, C.J., speaking for the supreme court, said (at p. 315): "After giving this case all the consideration which the summary nature of the proceeding will admit of, and under all the light which the numerous cases cited, and the very able arguments of counsel have shed upon the subject, I find myself bound by law to remand the prisoner. In doing so, it is not my intention to intimate any opinion upon the various points that have been discussed respecting the legality and regularity of the proceedings on the part of the plaintiffs. I wish to leave the defendant at liberty, without prejudice by anything now said, to apply at bar, if he thinks proper to do so, for his enlargement on those grounds. But in my opinion, this is not a proper case for the discharge of a defendant out of custody, upon a writ of habeas corpus. Whether this defendant is lawfully or unlawfully imprisoned, does not depend upon any settled and fundamental principles of law; but upon rules and questions of practice that have arisen in the progress of an ordinary suit at law, which are under the control, and ought only to be settled at the bar of the court in which the suit is depending. The doctrine *Page 167 
contended for by the defendants counsel, if once established, would soon draw into discussion and decision upon habeas corpus
at chambers, a very great proportion of the ordinary litigation in civil suits. Every man conceiving himself improperly arrested upon mesne or final process, or entitled to his discharge upon the ground of some mistake, irregularity or laches of the adverse attorney, would at once sue out a habeas corpus for his enlargement. In short, it would lead to utter confusion in the prosecution of suits, and bring into conflict the different tribunals and officers of justice. We should be called upon in this way, not only to settle the law and practice in suits depending in the supreme court, but to interfere with the business and decide upon the rules and practice of the courts of common pleas. Not only so, but the justices of this court would be appealed to on habeas corpus, to determine upon the sufficiency of affidavits for bail, and the legality or regularity of discontinuances and other interlocutory proceedings in other courts. I do not wish to restrict the use of this valuable writ; but we must not suffer our partiality for a proceeding so justly dear to freeman, as is the writ of habeascorpus, to beguile us into an abuse of it. We must not apply it to cases it was never intended to reach; and in which the well settled rules and principles of the common law, as administered in our courts, have furnished sufficient guards, against the unlawful imprisonment of the citizens. It is true, the defendant is restrained of his liberty, and it may be, that he is improperly restrained. But in this case it is not by force or violence; nor yet by mere pretense or color of law. It is upon process, by which, and for a cause of action for which, all other matters being right, he may be lawfully imprisoned. The only questions are, whether the writ was issued with legal and technical regularity; and whether the defendant, under all the circumstances of the case, was properly arrested: questions, the court out of which the writ issued, is perfectly competent to decide, and which, the legal principle is, it will decide when called upon to do so according to law." *Page 168 
In The State v. Sheriff of Middlesex, 15 N.J. Law 68, the same Chief-Justice said (at p. 69), that in the opinion delivered by him in the case of Peltier, 2 Gr. 312, it was stated as a general principle, that the writ of habeas corpus
is not a proper remedy to effect the liberation of a defendant out of custody, where the arrest and detention is on civil process out of a court of competent jurisdiction, and that the facts in the case at bar showed that the prisoner was arrested and detained on civil process out of a competent court, yet the facts upon which the habeas corpus was allowed, if true, constituted a case not within that jurisdiction.
Why the learned Chief-Justice referred to a civil proceeding I am unaware, unless it was that the Peltier Case and the case of the Sheriff of Middlesex were civil proceedings, and for greater certainty he referred to them as such. It is true, I think, that all he said of those cases refers with as great, if not greater, force to criminal cases. In fact, many of the other cases from this state cited in this opinion are in criminal proceedings in our courts.
In David v. Blundell, 39 N.J. Law 612, it was held by the supreme court that a prisoner in jail under a ca. sa. issued upon judgment founded on a contract, may be discharged by habeascorpus. The opinion was by Mr. Justice Scudder, and it concludes with the assertion that the order refusing the discharge of the prisoner is set aside and he is discharged from arrest and custody under the alias ca. sa. issued in the case. This decision was reversed (David v. Blundell, 40 N.J. Law 372), not, however, on the question of lack of jurisdiction to discharge such a prisoner on habeas corpus, but because analias ca. sa. might be issued against defendant who on his arrest under the original ca. sa. gave bond to the sheriff under the Insolvent Debtors' act and was released from custody and was afterwards refused a discharge by the court on the hearing of his application for the benefit of the insolvent law; that the plaintiff in such a case is not restricted to an action on the bond; that he may sue on the bond or have an alias ca.sa., or issue execution against goods or land, or bring an action on the judgment. *Page 169 
In Selz v. Presburger, 49 N.J. Law 396, the supreme court held that § 25 of Habeas Corpus act (Rev. p. 468), does not authorize the court or justice before whom such writ is returned, showing that the prisoner is detained by virtue of a legalcapias ad respondendum, to examine into and decide upon the sufficiency in fact of the proofs upon which the order for thecapias was founded. If the affidavits upon which an order for bail is made fairly present the question whether the case is one proper for a capias, then the determination of the judge or commissioner upon their sufficiency cannot be reviewed by means of the writ of habeas corpus.
In People v. Liscomb (New York Court of Appeals),60 N.Y. 559, Allen, J., speaking generally of the writ of habeascorpus, said (at p. 574): "The court [below] had jurisdiction of the person of the accused, and of criminal offenses committed within the county of New York, and necessarily had jurisdiction to pass upon the form and sufficiency of the indictment and the order and course of the trial, and decide every question that arose in its progress, and whether the determinations of the court, upon any or all of the questions, were right or wrong, did not affect the jurisdiction. In other words, the court had jurisdiction to make wrong, as well as right, decisions, in all the stages of the prosecution, and whether those made were right or wrong cannot be raised on habeas corpus."
In Patterson v. State, 49 N.J.L. 326, the supreme court had before it on certiorari certain proceedings had before Mr. Justice Scudder upon return of a writ of habeas corpus. The opinion was written by Mr. Justice Reed, who remarked (at p.331), that it was urged upon the argument that copies of the indictment should have been returned, for what purpose it is difficult to imagine. Not for the purpose of passing upon their sufficiency, for the court or justice upon habeas corpus does not sit to review errors, citing Cooley Const. Lim. 347.
In that case it was insisted that the indictments against the petitioner were not found by a legally organized grand jury, the question being that the court of common pleas as constituted, was not that provided for by law. The decision *Page 170 
was against the petitioner for the writ, the court remarking (atp. 333), that the rule seems to be that the character of a defacto officer, so long as the court had jurisdiction over the person and subject-matter of the adjudication, cannot be questioned upon this proceeding, citing Church on HabeasCorpus, §§ 356, 357, 369.
This last mentioned case was appealed (Patterson v. State,50 N.J. Law 421), and the court of errors and appeals held that certain statutes (naming them) did not affect the validity of indictments nor deprive the (criminal) courts of the right to try defendants thereon; and that if in such a case the conviction be reversed on error, the prisoner will not be entitled to discharge before the trial court has an opportunity of trying him again.
The writ of habeas corpus lies where imprisonment is illegal and no other remedy is available to secure release therefrom. As in the case of other extraordinary prerogative writs, the writ ofhabeas corpus will not ordinarily be granted where there is another adequate remedy by appeal or writ of error or otherwise.29 Corp. Jur. 17. While want of jurisdiction is ground for relief by habeas corpus, this is subject to the rules as to discretion in the issuance of the writ and the rule against interference with pending proceedings where there is an adequate remedy by trial and appeal or error in ordinary course. Where the court has general jurisdiction of the cause and the person, error in the determination of the questions of law or fact upon which its jurisdiction in the particular case depends, is error in the exercise of jurisdiction, and in accordance with the general rule, affords no grounds for habeas corpus. Ibid. 32. Where an attempt has been made to charge an offense of a kind over which the court has jurisdiction, mere inartificiality in pleading or defects or irregularities in, or insufficiency of, indictment, information or complaint constitute no ground for relief byhabeas corpus, because under such circumstances the detention is not without jurisdiction and is therefore not illegal although it may be erroneous. Relief for error or irregularity must be had by appeal, writ of error or other proceedings for *Page 171 
review, or by application to the trial court in which the charge is pending. Ibid. 41. Habeas corpus is a collateral attack on the judgment under which the prisoner is held. Accordingly, where the trial court had jurisdiction of the offense and of the person of the defendant, and power to render the particular judgment or sentence in proper cases, habeas corpus will not lie upon the ground of mere errors or irregularities in the judgment or sentence rendering it not void but only voidable. Ibid. 51.
In People v. Hayes, 172 App. Div. 442, the New York county court had continued a term for the trial of criminal cases for the purpose of imposing sentence at a later day, and the court held that in any event habeas corpus is not the proper remedy to challenge the jurisdiction of the court on the ground that the term was unlawfully continued. Jenks, P.J., said in the opinion (at p. 448), that assuming he was wrong in that the sentence was not void, but merely erroneous and voidable, as the relator contended, he was not entitled to relief upon habeas corpus, which is not a writ of error, or other process of review, and, therefore, is not available if the judgment is merely erroneous; that Bishop in his New Criminal Procedure, says, that habeascorpus is not a substitute for a writ of error and on a judgment simply erroneous but not void, it will not lie, citing authorities.
When a trial is had at a special term it will be presumed to be rightly called. Dodge v. State, 24 N.J. Law 455.
 Habeas corpus will not lie because of error or irregularities in drawing, summoning, or impaneling the jury, or in discharging the jury. 29 Corp. Jur. 48.
 In re Marlow, 75 N.J. Law 400, Mr. Justice Swayze, speaking for the supreme court, said (at p. 420), that the difficult question always is to distinguish between a lack of jurisdiction to pronounce the particular judgment, and a mere error in law or fact to be redressed by writ of error in the one case, and by motion (taking the place of the old writ of error coram nobis), in the other case. Many cases are collected in 21 Cyc. 298,299, and cited in the case itself. In *Page 172 
all of the cases cited errors had been committed by the trial court. In some of them the proceedings failed to comply with the statutory requirements, but it was nevertheless held that the proper method of redress was by writ of error, and not by habeascorpus, and this for the reason that the error might be such that it could be corrected.
In Ex Parte Yarbrough, 110 U.S. 651; 28 Law ed. 274,
Yarbrough and others were arrested and jailed, and the supreme court of the United States held that it had no general jurisdiction to review on error or appeal the judgment of the circuit courts of the United States in cases within their jurisdiction; but that it is equally well settled that when a prisoner is held under the sentence of any court of the United States in regard to a matter wholly beyond or without the jurisdiction of that court, it is not only within the authority of the supreme court, but it is its duty, to inquire into the cause of commitment when the matter is properly brought to its attention, and if found to be as charged, a matter of which such court had no jurisdiction, to discharge the prisoner from confinement (citing cases); that it is, however, to be carefully observed that this latter principle does not authorize the court to convert the writ of habeas corpus into a writ of error, by which the errors of law committed by the court that passed the sentence can be reviewed there; for if that court had jurisdiction of the party and of the offense for which he was tried and has not exceeded its powers in the sentence which it pronounced, that court can inquire no further.
In In re Lancaster, 137 U.S. 393; 34 Law ed. 713, Fuller, C.J., speaking for the supreme court of the United States, said: "The petitioners were indicted * * * and have been taken into custody. They have not invoked the action of the circuit court upon the sufficiency of the indictment by a motion to quash or otherwise, but ask leave to file in this court a petition for a writ of habeas corpus, upon the ground that the matters and things set forth and charged do not constitute any offense or offenses under the laws of the United States or cognizable in the circuit court, and that for *Page 173 
other reasons, the indictment cannot be sustained. In this posture of the case we must decline to interfere. The application for leave to file the petition is denied."
In re Hall, 94 N.J. Eq. 108, Vice-Chancellor Buchanan said (at p. 113): "The jurisdiction of a court — its `right to speak' — is its right, or rather its power, to pronounce a particular final judgment or decree as to a particular person in a particular action. If it has no such power then its judgment is void and amounts to nothing. If it has such power, that power may be exercised rightfully or wrongfully in any given case, but though exercised wrongfully it is, at most, only voidable; and if voidable at all, only by direct appeal. There may be no right of appeal therefrom, or no appeal may in fact be taken, but except it be reversed on appeal it is valid and binding everywhere."
The above quotations largely deal with final judgments or sentences of a criminal court, but by analogy their doctrine is applicable on principle to the facts of this case; in fact, this case is much stronger for non-interference on habeas corpus, when that writ is sought for the purpose of declaring interlocutory proceedings, indictments and warrants of arrest based thereon, to be null and void and for the discharge of the person indicted and arrested. Those questions, as we have seen, are for the trial court, or the supreme court in this state oncertiorari.
After indictment found process is issued to bring in the accused to answer it. An indictment may be preferred against him in his absence, since were he present he could not be heard before the grand jury against it. After indictment found it may be certified and removed with all the proceedings thereon from any inferior court of criminal jurisdiction into the courts of king's bench (supreme court in New Jersey), which is the sovereign ordinary court of justice in causes criminal; and this is frequently done to consider and determine the validity of indictments and the proceedings thereon, and to quash or confirm them, if there is cause, c. 4 Bl. Com. [*]320. *Page 174 
At the present time the practice is for the court to issue a bench warrant for the arrest of the accused, and a warrant of commitment reciting the fact of indictment and describing the crime. * * * The issuing of a bench warrant is a mere ministerial act, for the performance of which it is not necessary that the clerk should possess judicial powers conferred on him by law or delegated to him by the court. 16 Corp. Jur. 386.
In the case at bar the Ocean oyer and terminer had jurisdiction over the offenses alleged against the petitioner herein, and acquired jurisdiction over his person by his apprehension on the warrant. The case is therefore one for review, not for habeascorpus.
 DECISION.
The applicant for the writ being indicted by a grand jury of the county of Ocean for malfeasance in office, and with another for conspiracy, bench warrants were issued for his arrest, and upon them he was taken into custody and is restrained of his liberty. Habeas corpus is a high prerogative writ, and by that is meant a writ issued not as ordinary writs of strict right, but as the sound judicial discretion of the court; it is one of right only when the applicant shows himself entitled to it, and it ought not to issue unless the court is satisfied that the case is a proper one, because it issues only upon proper cause shown to the court; and it will not ordinarily be granted where there is another adequate remedy by appeal, or writ of error, or otherwise. In this case the proper means of attacking the validity of the indictments is by application to the trial court to quash them, or to the supreme court, if the case be removed there on certiorari, and if the indictments fall, the process issued upon them falls with them; and where the court below has general jurisdiction of the cause and the person, error in the determination of the questions of law or fact upon which its jurisdiction in the particular case depends, is error in the exercise of jurisdiction, *Page 175 
and in accordance with general rules, affords no ground forhabeas corpus. Habeas corpus is a collateral attack on the indictment and process under which the accused is held; and accordingly, where the trial court had jurisdiction of the offense and of the person of the offender (which the court of oyer and terminer of Ocean county clearly had), and power to render a particular judgment or sentence in a proper case (which this case undoubtedly is, although the proceedings are in an initial stage and no trial has taken place or judgment rendered),habeas corpus will not lie upon the ground of mere irregularity in the proceedings, rendering them not void, but only voidable. Nor will habeas corpus issue to discharge a prisoner from restraint when the challenge to the jurisdiction of the court below is on the ground that the term was unlawfully continued.Habeas corpus is not a writ of error or other process of review, and, therefore, is not available if the judgment is merely erroneous, and it will not lie because of error or irregularity in drawing, summoning or impaneling the jury, or in discharging them.
From the foregoing cases it appears that the question of the validity of an indictment is one always for the trial court, or, on review in the court above, and is not ground for the issuance of a habeas corpus. The decisions in this state are to the effect, as appears above, that on habeas corpus the validity of an indictment will not be determined. As the issuance of a bench warrant upon an indictment is a ministerial act, the warrant itself is one which is issued as of right on an indictment found to bring in the accused, and is in no sense a prerogative writ. Thus it appears that the court of chancery of New Jersey (or any court) on habeas corpus ad subjiciendum is not empowered to pass upon the validity of an indictment found by a grand jury in the court of oyer and terminer.
This being the law, I am constrained to the conclusion that the writ of habeas corpus should not be awarded in this case, because it clearly appears upon the face of the application therefore that its issuance is unwarranted and would be illegal, and, if granted, would have to be denied on hearing. *Page 176 
 CASES DISTINGUISHED.
Counsel for the applicant for the writ cite State v.Osborne, 79 N.J. Eq. 430, and In re Hall, 94 N.J. Eq. 108.
 State v. Osborne was a case in which the defendant was sentenced to serve a term in the state prison upon conviction on a plea of non vult in the Hudson county quarter sessions, and she sued out a writ of habeas corpus on the ground that the judgment was not a proper one nor fully within the jurisdiction of the court. Vice-Chancellor Garrison, in deciding the case, observed that it was familiar law that the writ of habeascorpus was not properly usable to take the place of a writ of error; and he held that under our statute providing that a person committed or detained under a final judgment of any competent tribunal of civil or criminal jurisdiction shall not be entitled to prosecute a writ of habeas corpus claiming that the prisoner was held under judgment which the court had no jurisdiction to pronounce; that error of any sort in imposing a sentence on accused, or abuse of discretion amounting to legal error, could only be corrected by writ of error, and was not reviewable on writ of habeas corpus. He reached the conclusion that the judgment in that case was not invalid, and that for the reason that it was imposed by a competent tribunal having criminal jurisdiction, which had jurisdiction of the prisoner, and that the judgment was within the terms of the law; and the defendant was remanded to custody. This case, by the way, was cited to show that this court had jurisdiction to maintain an application for a writ of habeas corpus ad subjiciendum, and as to that there is no doubt.
In re Hall was a writ of habeas corpus in this court, bringing up the legality of the confinement in the state prison of the petitioner, who was committed by the Hudson oyer and terminer, and Vice-Chancellor Buchanan held that where the court has power or jurisdiction to render the particular judgment, though such power is wrongfully exercised, the judgment is only voidable and can be avoided only by direct appeal, *Page 177 
and remanded the prisoner. This, too, is a case showing that chancery has jurisdiction in habeas corpus ad subjiciendum. And as to that there is no doubt.
Another case of importance, not cited by the applicant, should be adverted to, lest it be thought by some that the denial of a writ of habeas corpus in the case at bar might indicate that the proceedings In re Hague, 104 N.J. Eq. 31, did not lie. On the contrary, that case is clearly to be distinguished from this, and was upheld by the court of errors and appeals by an equally divided court. Ibid. 369. The matter was one of habeas corpus
in this court, and Vice-Chancellor Fallon, who heard the case, held that a writ of habeas corpus would lie to relieve from imprisonment and restraint one arrested by the sergeant-at-arms of the senate of New Jersey, by virtue of a warrant issued under the authority of a concurrent resolution of the senate and general assembly, charging the person apprehended and detained with contempt of the legislative body, occasioned by his failure and refusal to obey a subpoena issued by the joint committee of the senate and general assembly.
By the terms of our Habeas Corpus act (Comp. Stat. p. 2638
§ 1 subdiv. 2), it is provided that the following persons shall not be entitled to prosecute such writ:
"Persons committed or detained by virtue of the final judgment or decree of any competent tribunal of civil or criminal jurisdiction, or by virtue of any execution issued upon such judgment or decree, unless such judgment or decree be founded upon contract; but no order of commitment for any alleged contempt, or upon proceedings as for contempt, to enforce the rights or remedies of any party, shall be deemed a judgment or decree within the meaning of this section; nor shall any attachment or other process issued upon any such order be deemed an execution within the meaning of this section."
The contempt proceedings in the Hague Case were taken to enforce the asserted rights and remedies of the legislature.Habas corpus was the appropriate and lawful remedy to test the right of the legislature to proceed against Mayor Hague, who sued out the writ. *Page 178 
Now, I desire to mention the case of In re Thompson, 85 N.J. Eq. 221,
in which the Chancellor held that because the power of the governor of a state, upon whom demand is made for a fugitive criminal, is ministerial and without the right to exercise executive or judicial discretion, the person arrested by virtue of an executive warrant of extradition has the right to invoke the judgment of a proper judicial tribunal, by virtue of habeascorpus, to inquire into the lawfulness of his arrest and imprisonment; and that upon the authorities. It is always the right of the extradited person to avail himself of habeascorpus for a judicial review of extradition, c., so this case is clearly to be distinguished from the case at bar.
 CONCLUSION.
It should be remarked that most of the cases on habeas corpus
deal with the imprisonment and detention of one who has been condemned in a final judgment. The case at bar is in no such posture. Here we have only a preliminary proceeding, namely, an indictment in the oyer and terminer and a bench warrant thereon. Now, it has been held in this state and elsewhere that the validity of an indictment is not triable on habeas corpus. The bench warrant issued thereon is a mere ministerial writ, that is, one of right, issuing as of course to bring in the defendant upon indictment found. It is always granted upon application of the prosecutor. The validity of the indictment is a matter to be heard in the court to which it is returned, or on certiorari in the supreme court, the inheritor of the jurisdiction of the kings' bench in England. And in no event are the questions here raised in this application for a writ of habeas corpus triable under that writ.
Let the prayer of the petition be denied, and the application for a writ of habeas corpus be dismissed. *Page 179