Petition was filed in this court by the above-named petitioners, Tremper, Duncan and Bennett, setting forth that they are imprisoned in the New Jersey State Prison under and by virtue of sentences imposed on July 17th, 1934, by the Ocean County Court of Oyer and Terminer, for the crime of murder; further alleging the occurrence of certain circumstances during the course of their trial, which they contend were legally erroneous and were of such nature, character and effect as to deprive the court of jurisdiction to impose any sentence whatever; further contending that the sentences were and are void, for want of jurisdiction and that their imprisonment thereunder is therefore illegal; and praying the issuance of a writ of habeas corpus, in order that the truth of such allegations and contentions might be inquired *Page 278 
into and if found correct, an order made for their discharge from the said imprisonment.
The purpose and function of the writ of habeas corpus is to afford a means whereby a person who claims that he is illegally imprisoned or restrained of his liberty may have that claim inquired into by a competent court, and (if the claim be found well grounded) have himself discharged and freed of that restraint. Chiefly it was and is intended for the benefit of those imprisoned by mandate or order of some authority other than that of a court, in order that they might have the legality of such restraint passed upon by a court; but the benefit of the writ is also extended to those who are imprisoned under order by a court which was not clothed with jurisdiction — (legal power or authority) — to make such order.
(It is not the function of the writ to bring up for review the correctness of any of the proceedings before a court which did have jurisdiction to entertain and determine such proceedings. It is not a substitute or alternative available in place of writ of error or appeal. If the court which has ordered the imprisonment had jurisdiction of the parties and the subject matter and to pronounce the order or sentence of imprisonment in a proper case, its action cannot be reviewed by habeas corpus. The provisions of the statute, — R.S. 2:82-13, (formerly 2 Comp. Stat. p.2639, § 2), — which is of course declaratory of, and not in derogation of, the common law, — expressly exclude from the benefit of the writ such persons as are imprisoned by virtue of the final judgment of a competent tribunal of civil or criminal jurisdiction. If the court which ordered the imprisonment was clothed with legal competence (jurisdiction) so to order, it had the lawful power and authority to make a wrong decision as well as a right decision; and the claim that its decision was wrong cannot be brought up for determination in habeas corpus
proceedings, unless the claim of wrongful decision be that it had no lawful power to make that order.)
In the instant case the claim of petitioners is that the Court of Oyer and Terminer did not have jurisdiction to render the judgment or sentence under which they are imprisoned. *Page 279 
Their right to the writ, however, is not established simply by the presentation of circumstances showing, prima facie, a reasonable possibility that the court, upon the issuance of the writ and the subsequent inquiry and hearing thereunder, would conclude that the sentencing court did in fact lack jurisdiction.
The writ of habeas corpus is a high prerogative writ, not a writ of right. It does not issue as of course, but only where the applicant shows that he is entitled to it. In re Thompson,85 N.J. Eq. 221, at 249, 96 Atl. Rep. 102; In re Davis, 107 N.J. Eq. 160, pp. 166, 174, 152 Atl. Rep. 188; Church, Hab. Corp., 2nd ed.§§ 77, 92; 29 C.J. p. 14, § 7, p. 148, § 162; 12 R.C.L., p. 1232,§ 48.
The question as to whether or not the applicant, on the circumstances presented by him, is entitled to the issuance of the writ, is a matter for judicial determination by the court to which application is made, in the exercise of sound judicial discretion. In re Thompson, supra, at p. 249; In re Davis,supra, at pp. 165-6, 170, 174; Church, supra, § 92; 29 C.J. p.148, § 162.
Thus the writ "will not ordinarily be granted where there is another adequate remedy by appeal or writ of error or otherwise" — In re Davis, supra, pp. 170, 174; In re Belt, 159 U.S. 95, at100; 29 C.J. p. 19, § 11, p. 17, § 9; 12 R.C.L. p. 1186 — (although of course even in such circumstances, the writ may be, in certain cases should be, and not infrequently has been, allowed). It seems clear also that, as a proper exercise of sound judicial discretion, ordinarily the writ ought not to be issued, — the applicant is not entitled to it as a matter of justice and right, — in a case alleging lack of jurisdiction, if it also appeared among the circumstances before the court at the time the application is made, that a precisely similar application upon precisely similar allegations has previously been made to, duly considered, and denied by, a court of equal jurisdiction and standing, (as, for instance, where the first application was to the Supreme Court and the second to this court, or vice versa), — and especially so, — even if there were some other differences in the two applications, — if the first court had actually considered *Page 280 
the facts and legal principles relied upon as establishing lack of jurisdiction in the sentencing court and determined that the sentencing court had had jurisdiction; inasmuch as there is provided in this state an appeal from the denial of the writ or denial of discharge after issuance of the writ and hearing thereon. Cf. Selz v. Presburger, 49 N.J. Law 396, p. 392,8 Atl. Rep. 118; also Church, (supra) § 389a, p. 586.
Likewise it would seem clear that the writ ought not, ordinarily, (if ever), to be issued if it appeared on the application that the question of whether or not the sentencing court had had jurisdiction had been previously presented to and determined (adversely to the claim of lack of jurisdiction) by the highest appellate court on direct appellate review of the judgment of the sentencing court, — e.g., by our Court of Errors and Appeals on writ of error to the Ocean Oyer and Terminer. Under such circumstances it could scarcely be contended that petitioner was entitled to the writ as a matter of right and justice, or that the allowance of the writ by this court or the Supreme Court would be a proper exercise of sound judicial discretion, — (even though the power to issue the writ be conceded; cf. Peltier
v. Pennington, 14 N.J. Law 312, at 319, top).
It is evident then that on an application for the writ, the court is required to determine, in its sound judicial discretion, whether under all the circumstances which the court has before it on the application in the particular case, the writ ought to be issued as a matter of justice, — all things considered. In the instant case, in which petitioners claim that they are imprisoned under the order of a court which did not have jurisdiction to make such order and seek the issuance of the writ in order to have that claim inquired into, this court is required to determine not only whether the presentation made by petitioners sets forth a reasonably sound, prima facie case of imprisonment under an order void for lack of jurisdiction, which ought to be inquired into, but also, in its sound judicial discretion, whether under all the circumstances presented, petitioners are entitled as a matter of justice and right, to have the writ issue in order that such claim may be inquired into. *Page 281 
In the instant case two contentions are made on behalf of the state, as reasons why the court should determine, as matter of sound judicial discretion, that the petitioners are not
entitled as a matter of justice and right to have the writ issued so that their claim may be inquired into, — (assuming arguendo
that petitioners' claim otherwise presents a prima facie "cause of action," — a situation indicating the reasonable possibility that it may be found that they are imprisoned under an order void for want of jurisdiction).
In the first place it is argued that this court ought not to undertake to inquire into the question as to whether the Oyer and Terminer had jurisdiction to make the order of commitment, because that question has already been determined in a proceeding in which the state and the present petitioners were parties, by a court having jurisdiction to determine that question, — i.e., that the issue sought to be raised by petitioners is resadjudicata between the parties.
It is generally, if not universally, considered that a court, in habeas corpus proceedings, is not bound by the legal rule ofres adjudicata, — especially as to the question of whether or not a committing court had jurisdiction to make the order of commitment, — but on the contrary has the power to inquire into and determine for itself that question of jurisdiction. On the other hand, in a number of jurisdictions, — see 29 C.J. p. 179,§ 203 and notes, — it has been held, (and it would seem properly so held), that although the court in habeas corpus is not bound by res adjudicata, as such, nevertheless the proper exercise of a sound judicial discretion should and will lead the court to decline to issue the writ in certain cases where the issue sought to be raised by writ has already been determined adversely to petitioner by another court of competent jurisdiction and equal or higher standing, — such as where the application is made to one justice after having previously been determined by another justice of the same court, or where the same issue has previously been determined by the highest appellate court in direct appellate proceedings.
Assuming however that a court in habeas corpus proceedings, in its exercise of sound judicial discretion, ought to be guided and controlled, in cases such as those last mentioned, *Page 282 
by considerations or doctrines akin to the legal principle ofres adjudicata, the same thing ought not to be true, and is not true, in all cases. In the instant case the state's contention is that the Oyer and Terminer had jurisdiction to determine all
questions arising in the course of the criminal proceeding, including the question of its own jurisdiction; that in and by its judgment and sentence there was impliedly included a determination that it had jurisdiction to pronounce the same; and that such determination is res adjudicata of that question of jurisdiction and a bar to its being raised in the present proceeding which is between the same parties (the state and the then defendants who are the present petitioners) and comprises the same "cause of action," i.e., the right of the state to have the defendants incarcerated as punishment for the commission of the crime of murder. All of this may be conceded except the contention that this court in this proceeding is bound by the trial court's finding and adjudication of its own jurisdiction. (That a habeas corpus proceeding is a suit or proceeding, — a civil suit, separate and distinct from the criminal prosecution, — is held in In re Thompson, supra, at p. 248).
It is true that in the ordinary civil suit, if there has been a prior suit between the same parties involving the same "cause of action" or claim, — (if the right to relief in the second suit rests upon the same point or question which in essence andsubstance was litigated and determined in the prior suit — Cityof Paterson v. Baker, 51 N.J. Eq. 49, 26 Atl. Rep. 324; *In reWalsh's Estate, 80 N.J. Eq. 565, 74 Atl. Rep. 563; *White v.Mindes, 106 N.J. Law 606, 148 Atl. Rep. 781), — and if the first suit has proceeded to final judgment determining the controversy, the parties are estopped from re-litigating not only the issues actually raised and determined in the prior suit, but also from raising and attempting to litigate any and all other matters which could have been raised and presented for determination in that prior suit, — even though they were not in fact so raised or considered therein. *Miller v. Stieglitz,113 N.J. Law 40, at 44, 172 Atl. Rep. 57; *In re Walsh's Estate,80 N.J. Eq. 565, at 569, 74 Atl. Rep. 563. *Page 283 
To this rule however there seems to be an exception, to wit, that it is open to the parties in the second suit to raise and litigate the question of the jurisdiction of the court, (in the first suit), to render or pronounce the final judgment, — especially if that question was not actually litigated and expressly decided in the first suit. It has indeed frequently been said that a void judgment is always open to collateral attack, and that the question of the jurisdiction of the court to render a particular judgment is always open to be inquired into in any collateral proceeding. While the soundness of such a broad statement may well be doubted, — for the reasons set forth in the next (parenthetical) paragraph hereof, — there can be no question but that a court on habeas corpus ought not to, and will not, feel itself precluded by any consideration akin to the legal rule of res adjudicata, from inquiring into, and determining for itself, the question as to whether a court which has pronounced sentence in a criminal case had jurisdiction to pronounce such sentence, where the only previous determination (that the sentencing court had jurisdiction to sentence), is that which has been made by the sentencing court itself; — and especially should, and will, this be so where that determination by the sentencing court is merely implied or has not been preceded by an actual litigation or argument of that particular issue. (As to the force and effect of a court's determination of its own jurisdiction, see Hine v. Morse, 218 U.S. 493, at pp. 504-9.)
(Where there has been an actual litigation and determination between two parties, of the question as to whether the court which has pronounced a judgment in a case between these parties had jurisdiction to pronounce such judgment, it seems only good reason and sound law to hold, in the ordinary case, that that determination is res adjudicata of that question, as between those parties; and it has been so held, in effect, in a matter involving the jurisdiction of the court in a civil proceeding.In re Fischer, 118 N.J. Eq. 599, 180 Atl. Rep. 633; and see also 15 C.J., tit. "Courts," § 173, p. 852.)
In the instant case there was no actual contest or argument before the sentencing court as to the jurisdiction of that court to pronounce sentence; and it is concluded that this court, *Page 284 
in the exercise of sound judicial discretion, ought not to decline to issue the writ simply because of the existence of the implied determination by the sentencing court, of its own jurisdiction.
The second contention on behalf of the state is that the court in the present case should, as a matter of sound judicial discretion, decline to grant the writ; — should determine that petitioners are not entitled to have the writ issue, as matter of right and justice; — should hold that under the doctrines of waiver or estoppel or considerations akin thereto, the petitioners as a matter of justice and right, all things considered, are precluded from asserting such right as they might otherwise assert, to have their claim of illegal imprisonment inquired into on habeas corpus.
The argument in support of this contention is, that under the statutes of this state petitioners had the right and opportunity, during the period of one year after the imposition of sentence, to present their claim of unlawful and void sentence, to the highest appellate tribunal, in direct appellate proceedings; that petitioners took no such step, and took no other step and made no effort of any kind to have this claim of theirs passed upon by any court until this present application made some four and one-half years after the said sentencing; that it must be deemed therefrom that they intentionally chose and elected to waive and forego the right and opportunity to have such claim passed on, rather than to run the risk of having more onerous sentences (including possible sentence of death) pronounced, after a new trial, if their said claim should be passed upon and sustained; that it must be deemed that because of their long and unexcused delay, during which witnesses on the part of the state may have died or otherwise become unavailable or their memories dimmed, they are not now entitled as a matter of justice and right, to have their claim entertained and passed upon.
The issue thus raised seems to be one of first impression in this state; and indeed no specific authority in regard thereto is cited by counsel on either side. As would naturally be expected, various conflicting decisions exist in the determination of issues more or less analogous to that here under *Page 285 
consideration. The minds of various courts differ with respect to what they consider the just and right thing to do under certain circumstances, — as to what is a proper exercise of sound judicial discretion. Also the attitude of the same court changes with the trend of the times, and especially where changes have been made in other legal remedies. Thus, as has been mentioned, in earlier days, when there existed no provision for appeal from a denial of the writ or denial of discharge, it was considered that the writ should be issued on application, no matter how many times a precisely similar application had been made to and denied by other courts or judges; whereas in modern times, and where such provision for appeal exists, it has been deemed by some courts (although other courts still maintain a contrary view) that in such circumstances the writ should ordinarily be denied, for reasons similar to those on which the legal rule of resadjudicata is based.
It is deemed by this court that in arriving at the determination as to whether or not an application for the writ should be granted, the court, though it be not bound or conclusively controlled by the legal rules or equitable rules which would be applicable in cases other than habeas corpus
proceedings, ought nevertheless, in determining what is the just and right thing to do, to consider and be guided by, interalia, the reasons which underlie the legal and equitable rules aforesaid.
True it is that it is the public policy of this state that all due safeguards against injustice, and all constitutional rights, should be preserved to persons accused of crime; and that a court, on habeas corpus, has the corresponding judicial responsibility of endeavoring to see to it that that policy is properly carried out. But it is equally true that it is the public policy of this state, and to the interest of its citizens, that those guilty of crime should not go unpunished; that there should not be undue litigation; and that where the state has provided for the person accused of crime, by means other thanhabeas corpus, all due and reasonable opportunities for him to obtain for himself the enforcement of the legal and constitutional rights to which he is entitled, he should not be permitted either to harass the state and its citizens by further *Page 286 
repeated attempts by legal proceedings to litigate over again that which has been definitely determined against him, nor to endeavor to accomplish a fraud and imposition upon the state and its citizens under the guise of an effort to obtain the benefit of his legal and constitutional rights aforesaid after having had full and ample opportunity to obtain those benefits. As to this, also, the court, on habeas corpus, has a corresponding judicial responsibility.
The function, purpose and responsibility of a court, in cases involving the life or liberty of an individual, is concerned not merely with the rights and interests of the individual alone; it is equally concerned with the rights and interests of the citizens as a whole. It is true that this state has such an interest in the lives of its citizens that it will not permit a man to accomplish legal suicide by pleading guilty to first degree murder (see R.S. 2:138-3, and State v. Genz,57 N.J. Law 459, 31 Atl. Rep. 1037); but it need scarcely be stated that the interest of the state in the lives of its citizens is also such that it endeavors to protect itself against the loss of such lives, by providing heavy punishment (even to execution) for murder.
It is a legal right of one on trial on an indictment for crime, that no evidence which is not legally proper or competent shall be admitted, — such for instance as hearsay testimony. Testimony which would otherwise be inadmissible, as being hearsay, may, however, be admissible if it be part of the res gestae; and it is frequently difficult to draw the line in a particular case. It is readily conceivable, therefore, that a man might be convicted of murder as the result of extremely damaging hearsay testimony, erroneously admitted by the trial judge on the theory or belief by him that it was part of the res gestae. Relief against sentence imposed as the result of such wrongful conviction could not be sought in habeas corpus proceedings, since no lack of jurisdiction is involved; it could only be obtained by direct appellate proceeding, and no such appellate proceeding, (except doubtless an application for new trial on the ground of newly discovered evidence) could be brought after the expiration of a year from the imposition of sentence. R.S. 2:195-5. In re Belt,159 *Page 287 U.S. 95 is an excellent example of extremely damaging (alleged) error which was non-jurisdictional and hence not reviewable onhabeas corpus even though no other remedy was open.
Obviously then, the public policy of this state, notwithstanding that it is concerned that an accused person shall have his legal rights preserved to him and shall not suffer punishment as the result of wrongful conviction or sentence (and so concerned to the extent that full opportunity is accorded for the redress of errors which were harmful to the accused even though no objection was made by him at the time, — R.S.2:195-16, formerly 2 Comp. Stat. 1863, § 136), is nevertheless also concerned with the prevention of unduly delayed litigation and the avoidance of imposition upon the state as the result of possible reversals in appellate proceedings delayed for so long a time as to make it probable or reasonably possible that testimony or other evidence may have become unavailable, — concerned to such extent that it denies to one serving sentence of imprisonment, and who has had full opportunity for a year to take appellate proceedings, any further opportunity (except in cases of newly discovered evidence) to have entertained by any court,any claim by him (not based on a claim of lack of jurisdiction) that he was wrongfully convicted and hence illegally imprisoned.
What reason is there for any conclusion that the public policy of the state in respect to claims of wrongful conviction or sentence based on contentions of lack of jurisdiction, is, or may be, in anywise different from that in other cases? None can be perceived. Obviously the same public policy applies to "jurisdictional" cases where they are brought up or sought to be brought up in direct appellate proceedings. No distinction is made between them in the statutory provisions. Nor can it be argued that a difference in policy is indicated by the lack of a statutory provision limiting to a one-year period after sentence, the time within which habeas corpus may be applied for in such cases. Any such statutory effort to limit or restrict the right to habeas corpus, would undoubtedly be unconstitutional. Clearly also there is no logically classifiable difference between the cases of jurisdictional *Page 288 
error and non-jurisdictional error, as to the character or extent of the resultant harm to the accused. A non-jurisdictional error, such as the hearsay evidence in the case above hypothesized, might well be the actual cause resulting in conviction and a sentence of twenty years or more, while some jurisdictional error might, as a matter of actual fact, do no harm at all to the accused, — as for instance if the sentence were pronounced by a circuit court judge instead of a judge of the Oyer and Terminer, in a case where the circumstances were such that any and every person acting as sentencing judge would impose the full penalty provided by law. How can it be said that although a defendant claiming a non-jurisdictional but grievously harmful error, is prevented by the statutory provisions (prescribed by the legislature as expressing that which is just and right), from having his claim entertained by any court after one year from the imposition of sentence, nevertheless a defendant claiming a jurisdictional error such as that in the case last supposed, ought as a matter of fairness, justice and right, to be entitled to have his claim entertained, on habeas corpus, four or five years after the imposition of sentence? And if four or five years after, why not ten or twenty or thirty years after?
It seems clear to this court that the public policy of this state with respect to opportunity for redress of non-jurisdictional errors likewise applies with respect to jurisdictional errors; that the same reasons which form the basis for that public policy as regards the one class of cases, exist with equal force as regards the other class; and that that public policy, so expressed, ought to be regarded and acted upon as a factor of very considerable importance and effect in the judicial determination of the question as to whether an applicant for the writ of habeas corpus should be accorded, as a matter of human fairness, justice and right, an opportunity to have his claim of jurisdictional error considered and passed upon.
It is doubtless true that this factor ought not to be regarded as necessarily conclusive and controlling; that it is open to this court to consider, and that this court should consider, (1) whether according to the concepts of its own mind and conscience, the opportunities for review and redress of non-jurisdictional *Page 289 
errors, and the limitations on such opportunities, are reasonable, fair and just, and ought in reason, fairness and justice to be applied, in ordinary cases, to applications for the consideration, on habeas corpus, of claims of jurisdictional errors; and (2), even if question (1) be determined in the affirmative, whether in the particular case under consideration there be any special or unusual circumstances which adequately and reasonably explain and excuse the delay or which otherwise ought in reason, fairness and justice, — still considering the rights and interests of the state (the public in general) and the way in which they may be affected under all the circumstances, — to lead to the conclusion that in the particular case there ought to be accorded to the applicant the opportunity to have his claim entertained and considered.
In considering question (1), above, it is certainly not amiss to give thought to the fact that in former times the period within which direct appellate proceedings might be brought was three years instead of one, — Revision 1877, p. 373, § 2.
Evidently in those days it was the legislative belief that one year was not a reasonably sufficient time for opportunity to invoke such review, but that three years was. In the sixty-odd years that have subsequently elapsed the means and rapidity of travel and communication have so greatly improved that that which would have been only a reasonable period then, would clearly be much more than a reasonable period now.
In the instant case, however, no attempt of any kind to endeavor to have a review, was made by the present petitioners until some four and a half years had elapsed. Assuming (but not deciding) that if the present application had been made shortly after one year from the imposition of the sentence, this court might have deemed that even an unexplained and unexcused delay of slightly over a year, ought not to preclude them from an opportunity to have their claim entertained on habeas corpus, (though it did preclude them from opportunity to present it, or any other claim, on writ of error), it is nevertheless the opinion of this court that an application of this kind, made only after more than four years and a half from the time of sentence, ought not to be *Page 290 
entertained, at least in the absence of special circumstances: this for the reasons hereinbefore mentioned and discussed. The language of the Supreme Court in State v. Holmes,36 N.J. Law 62, at p. 65, (holding that the refusal to sign a bill of exceptions five years after the trial was a proper exercise of judicial discretion), is pertinent to the present discussion.
Next as to question (2), above. One example of a case where in fairness, justice and right the writ of habeas corpus ought to be granted notwithstanding that application is made after a lapse of several years from the date of sentence, is found in Ex parteRose, 122 N.J. Law 507, 6 Atl. Rep. 2d 388. In that case petitioner had pleaded guilty to indictment and was serving sentence for an act which was constituted a crime by a statute which was several years later held unconstitutional in another case. The statute being unconstitutional was void, and the act of which petitioner was admittedly guilty was therefore not a crime and never had been. Clearly, in all justice he should be permitted to seek, by habeas corpus, release from imprisonment, under those circumstances. Of course he had the opportunity to take direct appeal and did not do so, but obviously his failure and delay, though unexplained and unexcused, cannot possibly prejudice the interests of the state because there ought not to be, and never will be, any subsequent new trial.
But in the instant case there have not been presented, and do not appear, any special or unusual circumstances to account for or excuse the lapse of time and the failure to take any earlier action, nor to lead this court to the conclusion that there are or might be reasons why this case should be considered so sufficiently exceptional as to entitle petitioners, all things considered, to the issuance of the writ. On the contrary there are several circumstances which lead to the opposite conclusion.
It appears for one thing that the petitioners were represented by counsel at the trial. It is the reasonable presumption (and there is no contention or intimation to the contrary) that they consequently likewise had the benefit of consultation and discussion with counsel, after the trial and sentence, *Page 291 
in considering what could or should be done in view of the result which had transpired. It also appears that they themselves, at the trial, and after consultation with their counsel, expressly authorized and consented to the very thing which they now contend deprived the trial court of jurisdiction, i.e., the determination of the issues of fact by eleven men instead of twelve, — which indicates that they had had a real expectation or hope that they would be acquitted or at least not found guilty unanimously. It is also worthy of consideration that all three were on trial for first degree murder, and all three were therefore subject to the possibility of capital punishment or life imprisonment, upon due conviction, and would have been again so subject, on new trial, if the present sentence and conviction should have been set aside; whereas if they made no attempt to have that sentence and conviction set aside, they would run no risk of capital punishment or any other punishment greater than the sentences imposed, — life imprisonment for Duncan, and twenty years' imprisonment for each of the others.
It seems the fair and reasonable inference, — from these circumstances, and the further fact that although they have had ample opportunity so to do in the course of this proceeding, and have been put on notice that it might well be important for them so to do, they have made no contention whatever to the contrary, and no claim or contention of any kind in attempted excuse of their delay and failure to act, — that after consultation with counsel and deliberate consideration, they concluded that there would be no reasonable chance that a subsequent jury of twelve men would reach a different conclusion from that reached by the eleven men; that there was no reasonable chance that they would receive any lighter sentences after conviction on a second trial than those already imposed, but that on the other hand there was a real possibility that the sentences might be heavier; that there would be considerable expense attendant upon proceedings to review and a subsequent second trial; that the chances of success on review were not in their favor; and that considering all things, they made a considered and intentional determination *Page 292 
against the taking of proceedings for direct appellate review. It may well be possible also that they took into consideration the actual plan of waiting to seek review on habeas corpus, until such time as the evidence on the part of the state should be, or might well become, impaired and they might consequently expect eventually to go free if the conviction and sentence were set aside.
It may be argued that since the statute forbids a plea of guilty to a charge of first degree murder and forbids a sentence as for first degree murder on a plea of nolo contendere, this indicates a public policy that one accused of first degree murder shall not be permitted to waive any legal rights at the trial nor to waive any right to assert in proceedings for review, after sentence, any claim that he has erroneously been deprived of some such legal rights. The answer to such a contention is that the statute limiting to one year his right to assert such claims on writ of error, obviously does permit him to waive his right to assert such claim so far as concerns non-jurisdictional errors, — not only permits him to waive those claims (by failing to assert them within a year), but absolutely bars and precludes him from asserting them after one year. It may well be that he ought not to be barred within that year, either on writ of error or habeascorpus, by any waiver or election (no matter how deliberate or intentional) simply arrived at in his own mind and not evidenced by any overt step or act, and not involving any question of estoppel; but it is not necessary to determine that question in the present case.
The burden is of course upon the petitioners to show that they are entitled to the issuance of the writ, and their failure so to do is dispositive; it is not requisite that the state shall prove, or the court be convinced of the negative proposition — that they are not entitled to the writ. Cf. Johnson v. Zerbst,304 U.S. 458, at 468.
The conclusion of this court in the instant case is that the petitioners, seeking the issuance of the writ of habeas corpus
in order that their claim of jurisdictional error may be inquired into, have not shown that they are entitled thereto *Page 293 
as a matter of fairness, justice and right; that on the contrary, all things and all circumstances considered, they are not so entitled.
This is not a determination, one way or the other, on petitioners' claim that there was jurisdictional error and consequent void sentence; it is a determination that petitioners have not shown that they are entitled to have that claim entertained and passed upon.
As has been indicated, the determination herein appears to beres nova, and has not been reached without difficulty nor without careful and thorough consideration, — all of which might still further have been increased were it not for the fact that the right of review is open to petitioners, whereas there may be some doubt that such right would be open to the state, — even though R.S. 2:82-48 by its terms applies only to proceedings in the Supreme Court or the Court of Common Pleas.
The discussion herein has been as though the strictly proper and orderly procedure had been followed, — i.e., the inquiry and determination, prior to the issuance of the writ, as to whether the writ should issued. In many instances such orderly procedure is followed, and frequently on the filing of the petition an order is made to show cause why the writ should not issue. Such procedure is by no means requisite however. The courts in habeas corpus proceedings are not bound by any hard and fast rules of procedure or of pleading, and oft-times issue the writ, (where there seems on preliminary inspection of the petition a reasonable likelihood that petitioner is entitled to the writ) leaving until consideration of the whole case, the actual determination of the question as to whether petitioner was entitled to have the writ issue.
This was the course followed in State v. Osborne, 79 N.J. Eq. 430,82 Atl. Rep. 424, and which was likewise followed in the present case. Where such procedure is followed, the primary inquiry on the consideration of the whole case, is whether petitioner was entitled to have the writ issue. "The first question of course, is whether a proper case is presented for the application of the jurisdiction exercisable under the *Page 294 
writ of habeas corpus" — State v. Osborne, supra, at p. 434.
If that question is determined in the negative, the writ can and should be quashed or discharged, and the main claim or question as to the legality of petitioner's imprisonment is not gone into.
(In the Osborne case no issues were raised, such as those in the instant case, as to whether or not petitioner was "barred" by laches, limitation of action, waiver, election or estoppel, from being entitled to the issuance of the writ; the only question which arose as to the right of petitioner to have the writ issue, was the question as to whether the showing made by petitioner comprised a prima facie case of lack of jurisdiction in the sentencing court. There is no express statement in the opinion, of any specific determination of that question. The consideration requisite to the determination of that question, under the circumstances of that case, necessarily involved, at least to a very considerable degree, consideration of the main question as to whether there had or had not been a lack of jurisdiction; and Vice-Chancellor Garrison went into that question thoroughly and decided it. It would appear therefore that he was of opinion that the two questions were so interwoven that petitioner thereby established the right to have the main question entertained and considered, — the right to have the writ issued.)
Order will be entered for the discharge of the writ and the remanding of the petitioners to the custody of the keeper of the prison. *Page 295