# CASES DETERMINED

IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

FEBRUARY TERM, 1895.

---

### THE STATE v. PAUL GENZ.

1. The supplement to the Crimes act, enacted in 1893, directing that if to an indictment for murder a prisoner shall plead guilty, such plea shall be disregarded and a plea of not guilty be substituted and the case tried before a jury, is constitutional.
2. The provision is favorable to the accused and does not deprive him of any right that is indefeasible.

---

The following case was certified to this court by the Oyer and Terminer of the county of Hudson, viz. :-

Paul Genz was indicted by the grand inquest of the county of Hudson, summoned for the September Term, A. D. 1894, of the Court of Oyer and Terminer and General Gaol Delivery of said county, for the alleged murder of Clara Arnim, on the 28th day of August, A. D. 1894, at the city of Hoboken, in said county. Being arraigned on said indictment, at said term, the prisoner pleaded guilty. The court refused to

receive such plea, but disregarded the same and ordered a plea of not guilty to be entered to such indictment.

Whereupon, after due procedure, the prosecutor of the pleas of said county moved the trial of said indictment before a jury upon such plea of not guilty ordered entered as aforesaid. The prisoner objected to such a trial, on the ground that such was not his plea, and that it was the duty of the court to proceed to sentence him upon his plea of guilty.

This court, finding a case of doubt and difficulty presented, remanded the prisoner, and hereby certifies to the Supreme Court for its advisory opinion the following question :

Under the act of the legislature of New Jersey of March 1st, 1893, being chapter 36 of the laws of 1893, and the facts above recited, can Paul Genz be subjected to a trial for the murder of Clara Arnim upon a plea of not guilty ordered entered by the court, in disregard of his plea of guilty?

JOB H. LIPPINCOTT, *P. J.*
JOHN KENNY, *J.*
ALBERT HOFFMAN, *J.*

Argued at November Term, 1894, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE and VAN SYCKEL.

For the state, *Charles H. Winfield*, prosecutor of the pleas.

For the defendant, *Gilbert Collins*.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The certificate prefacing this opinion presents for our consideration but a single inquiry, and that is whether a defendant in an indictment for murder has an inalienable right to plead guilty to the charge. It is the supplement to the Crimes act, approved March 1st, 1893, that has given rise to the question. By the sixty-eighth section of the act as it stands in the Revision, the crime of murder is defined and is distributed into two classes—that is, murder of the first and second degree—and to this adjustment

is added the following provision, that when " the jury before whom any person indicted for murder shall be tried shall, if they find such person guilty thereof, designate by their verdict whether it be murder of the first or second degree; but if such person shall be convicted on confession in open court, the court shall proceed, by examination of witnesses, to determine the degree of the crime and give sentence accordingly."

This latter procedure, in case of a confession of the culprit, has been changed by the recent statute, the modification being expressed in these words, viz.: "And in no case shall the plea of guilty be received upon any indictment for murder, and if, upon arraignment, such plea of guilty should be offered, it shall be disregarded and a plea of not guilty entered, and a jury duly impaneled shall try the case in manner aforesaid; *provided, however*, that nothing herein contained shall prevent the accused of pleading *non vult* or *nolo contendere* to such indictment; the sentence to be imposed, if such plea be accepted, shall be the same as that imposed upon a conviction of murder of the second degree." *Pamph. L.* 1893, *p.* 82.

The fault found with this substituted method of proceeding is that, by it, the defendant in the given case is deprived of his right to confess his guilt or to put in his plea to that effect.

It neither has been, nor could it be, contended that the prerogative thus claimed has its origin or confirmation in any provision of the constitution of this state. In that instrument the rights of the criminal are specifically set forth; they are these: he cannot be charged with a criminal offence unless on the presentment or indictment of a grand jury; he is to have the right to a speedy and public trial by an impartial jury; to be informed of the nature and cause of the accusation; to be confronted with witnesses against him; to have compulsory process for obtaining witnesses in his favor; to have the assistance of counsel in his defence, and after acquittal he cannot be tried for the same offence.

It is obvious that none of these enumerated privileges lend the least support to the right now asserted; and this being

admittedly so, it is difficult to understand how such right is to acquire the quality of indefeasibility. In the learned brief placed in our hands in behalf of the defendant, counsel says "I do emphatically deny the right of the legislature to require the court to order a plea of not guilty to be entered against the plaintiff's protest." And his argument then proceeds with an attempt to show that at common law "there were certain substantial advantages from a confession."

But, granting this assumption, how does it even tend to show that such right is above legislative control? Common-law procedures, as such, are plainly not inviolable. Many of them have been abolished and most of them have been modified by legislation. They must receive a constitutional impress before it can be said that they stand above the reach of the lawmaker. If we were, therefore, to concede that, by force of the ancient English system, the defendant in a criminal arraignment was permitted to confess his guilt in open court, and that such right was advantageous to him, there seems not the faintest reason for a contention that such right could not be abrogated or modified at the legislative will.

But, in point of fact, the faculty of the prisoner to confess his crime in open court when charged with murder was never, at common law, a serviceable prerogative. The procedure merely provided a ready and facile road to the gallows. In form, the indictment always charged the crime of murder, and, consequently, when the plea confessing guilt was put in, as an immediate and inevitable consequence sentence of death was pronounced. It seems quite fantastical to contend that such a course of law as this is of such inestimable value to the prisoner that the legislature cannot deprive him of it.

There seems to be no reasonable ground whatever for such a contention.

The statutory provision here put in question is altogether favorable to the prisoner. From the earliest times, in these capital cases, judges have manifested a disinclination to proceed to judgment on the mere admission of the prisoner of

his guilt.   Thus Blackstone says : "Upon a simple and plain confession, the court hath nothing to do but to award judgment, but it is usually very backward in receiving and recording such confession, out of tenderness to the life of the subject, and will generally advise the prisoner to retract it and plead to the indictment."   4 *Bl. Com.* 331.   It will be observed, therefore, that the modification which the statute in question has effected is to substitute for the advice of the judge the mandate of the law, that the citizen shall not be adjudged to death upon his own confession, but that, *in favorem vitœ*, the state shall prove, in all respects, to the satisfaction of a jury, the crime laid in the indictment.

Let the Qyer be instructed to proceed with the trial on the record as it now stands.