Submitted on briefs June 18, affirmed July 29, 1919.

# NEWMAN *v.* MULTNOMAH FUEL CO.

### (183 Pac. 1.)

**Frauds, Statute of—Sale of Goods—Acceptance of Part.**

1.   Where the oral buyer of 2,500 cords of wood received and accepted at least 150 cords, the case came within the exception to the statute of frauds (Section 808, subdivision 5, L. O. L.), providing that an agreement for the sale of personalty at a price not less than $50 must be in writing, unless the buyer accepted and received some part of the property.

**Sales—Action for Breach—Damages—Evidence.**

2.   In an action for breach of a contract to purchase and pay for cordwood cut by plaintiff, plaintiff's testimony as to the cost of the stumpage and of the cutting and hauling *held* to afford a basis for the computation of damages.

[As to acceptance in part of goods, see note in 96 Am. St. Rep. 220.]

From Multnomah: CALVIN U. GANTENBEIN, Judge.

In Banc.

The plaintiff alleges that the defendant is an Oregon corporation; that about July 1, 1915, he entered into a parol agreement with it by which he was to sell and

the defendant was to purchase not less than 2,500 cords of wood by March 1, 1916; and that said wood was to be delivered as ordered, at the contract price of $3.50 per cord for Number 1, and $3.00 per cord for Number 2 wood, f. o. b. Portland, payment to be made within ten days after receipt and measurement by the defendant. The complaint recites that pursuant to said contract the plaintiff bought from the defendant one team of horses at the price of $500 and agreed that the amount of the purchase should be taken out of the proceeds of the sale of 500 cords of wood, and that this subsequent agreement for the payment of the purchase price of the team was reduced to writing on July 6, 1915.

The plaintiff says that pursuant to the verbal agreement of July 1, 1915, he entered into a contract with other parties, for stumpage, cutting and hauling the wood, and purchased materials necessary to carry out the agreement; that he has at all times been ready, able and willing to carry out his part of the contract; that prior to November, 1915, the defendant kept the contract and purchased about 650 cords, but at that time the plaintiff, at the defendant's request, cut the amount of his shipments about one half and in December, 1915, the defendant requested him to stop all shipments for the time being, but continued to affirm its agreement and advised plaintiff that it would soon use ''at least one carload of wood per day, and could use all the wood it had contracted for.'' It is further averred that the plaintiff continued to cut the wood and endeavored to comply with the contract, and that on February 28, 1916, the defendant informed him that it would not take any more wood and ever since has refused and still refuses to carry out its agree-

ment, by reason whereof the plaintiff has been damaged in the sum of $1,500.

After denying all the material allegations of the amended complaint, for a further and separate answer the defendant alleges that on July 6, 1915, it entered into a written contract with the plaintiff, which is pleaded *in haec verba,* and further avers:

"Said written contract constitutes the only contract for the purchase of any definite quantity of wood by defendant from plaintiff and said contract was subsequently fully executed and discharged by both parties thereto.

"That the purchase of said team of horses from defendant and the purchase of five hundred cords of wood by defendant from plaintiff, as set forth in said written contract and subsequently carried out, formed no part of and had no connection whatsoever with any other contract or understanding which this defendant had with the plaintiff for the purchase of wood or otherwise."

The defendant also alleges that after the completion of the written contract there was an understanding that the plaintiff should continue to furnish wood as it might be needed, at such times and in such amounts as defendant might designate, for which the defendant was to pay $3.50 per cord, and that "no wood was to be delivered unless ordered by the defendant"; that "said arrangement contemplated and covered only such quantities of wood as the defendant might be able to handle in its business from time to time, but that no definite or specific number of cords nor any specific quantity of wood was designated or contracted to be so delivered." It is further averred that under such arrangement in and between the months of July, 1915, and February, 1916, the defendant repeatedly urged plaintiff to deliver carloads of wood as they

were required by the defendant in its business; that the plaintiff failed to make such deliveries, alleging shortage of cars and inadequate transportation facilities, and that the defendant was thereby embarrassed in its business, resulting in its damage.

The reply specifically denied all the new matter in the answer.

When the plaintiff rested his case the defendant filed the following motion:

"We desire at this time, your Honor, in order to save the record, to move the court for a nonsuit in this case, for the reason that the evidence of the plaintiff is not sufficient to sustain the allegations of the complaint."

The court sustained the motion, but after further argument reversed its ruling.

When the testimony was all taken the court instructed the jury in a charge remarkable for its brevity. Neither counsel requested any instructions or took any exceptions. The jury found for the plaintiff for $200. No motion was filed for a directed verdict or to set aside the verdict rendered. From a judgment in favor of the plaintiff the defendant appeals, claiming that the trial court erred in denying its motion for a nonsuit, for the reason that there was no legal evidence to support the judgment; that the alleged oral agreement was merged in the written contract; that there is no damage shown; that exclusive of the written contract, the parol agreement was void, because it was an oral contract for the sale of personal property at a price exceeding $50, and also because of uncertainty; that the plaintiff's alleged cause of action was "one for the breach of a contract arising out of the sale and delivery of cordwood, and not one arising out of the manufacture of any article to

be delivered''; and that there is no evidence of the
market value of the wood at the time and place of de-
livery.                                        Affirmed.

For appellant there was a brief submitted over the
name of *Messrs. Gebhardt & Hendrickson.*

For respondent there was a brief prepared and sub-
mitted by *Mr. Conrad P. Olson* and *Mr. James R. Bain.*

JOHNS, J.—In the absence of any requested in-
structions or exceptions to those which were given, a
motion for a directed verdict or to set aside the judg-
ment, the overruling of the motion for a nonsuit is the
only question before this court. While that motion
does not point out or specify the grounds upon which
it should be sustained, it appears that it was argued
before the court and after argument the court made
this ruling:

"I don't see how you can get away from the law, Mr.
Olson. It seems to me this amounts to a sale of per-
sonal property to the value of more than fifty dollars,
and if so, the agreement should be in writing."

After further argument the court ruled:

"Well, this evidence went in without objection. On
cross-examination you inquired into the cost of cutting
the cordwood, and so forth. I think I will change my
ruling on that. The motion for a judgment of nonsuit
is denied and an exception is allowed."

It is apparent from this that in any event the ques-
tion of the statute of frauds was argued to and consid-
ered by the court.

Assuming that the remaining questions now urged
by the defendant were embraced within the motion for
a nonsuit and argued before the trial court and are

now legally before this court, we think the judgment should be affirmed.

1. It appears that the plaintiff did not have any cordwood and was not engaged in the wood business at the time of the alleged parol agreement; that the contracted wood was then in the form of standing timber, only a portion of which was owned by the plaintiff, and that he had contracted with the owners of timber for the remainder of the 2,500 cords. It is also shown that under the terms of the alleged contract the wood was to be delivered f. o. b. Portland at the defendant's place of business. To comply with his contract it was necessary for the plaintiff to fell the timber, cut it into cordwood and haul it to the railroad for shipment, to purchase tools, to employ men for the cutting and to procure men, wagons and teams for the hauling. This was done, and the plaintiff was actually engaged in complying with his alleged oral contract. The evidence shows that the plaintiff cut the wood expressly for the defendant and not for the public market, and that in fact his contract was one to make cordwood out of standing timber and to deliver it by the labor of man and team. The jury found for the plaintiff, and for such reason we must assume that there was an oral contract between the plaintiff and the defendant. The alleged written contract was for 500 cords of wood, but it is undisputed that the plaintiff delivered and the defendant accepted 650 cords of wood. It must follow that at least 150 cords of wood were delivered and accepted under the oral contract. Section 808, subdivision 5, L. O. L., known as the statute of frauds, specifying what contracts shall be void says:

"An agreement for the sale of personal property at a price not less than $50, unless the buyer accept and receive some part of such personal property. * * "

By the undisputed facts after verdict the defendant did accept and receive at least 150 cords of wood on the oral contract and it did "accept and receive some part of such personal property," and for such reason the defendant comes within the exception.

2. The defendant also contends that there was no legal testimony on the measure of damages. The plaintiff testified as to the cost of the stumpage and of the cutting and hauling, and the railroad charges upon each cord of wood; that he was to receive $3.50 per cord for Number 1, and $3 per cord for Number 2, or doty wood, and that as to the latter there was no stumpage charge. From this evidence, the amount of plaintiff's damage was a question of mathematics only.

While the defendant contends that the only contract which it ever had with the plaintiff was in writing, and was for only 500 cords of wood, the plaintiff alleges that there was a parol agreement for the sale and purchase of 2,500 cords, to be delivered on or before March 1, 1916, and that such parol agreement was separate and distinct from and was not embraced within the terms of the written contract; in other words, that there were two separate and distinct contracts, one in writing for 500 cords of wood, from the proceeds of which the plaintiff was to pay $500 as the purchase price of the team; and the other in parol, for 2,500 cords. That was a question of fact and the jury found for the plaintiff. While reasonable men might and would differ as to the verdict which should be rendered, the fact remains that there is sufficient evidence to sustain the verdict returned by the jury. The judgment is affirmed.          AFFIRMED.