19 N.J. Super. 243 (1952)
88 A.2d 220
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH CYNKOWSKI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 11, 1952.
Decided April 30, 1952.
*245 Before Judges EASTWOOD, BIGELOW and FRANCIS.
Mr. Richard J. Congleton, Essex County Prosecutor, for the State (Mr. C. William Caruso, of counsel, on the brief).
Mr. Joseph Cynkowski, pro se.
BIGELOW, J.A.D.
This is an appeal from an order on habeas corpus, remanding appellant to State Prison. On October 28, 1940, defendant pleaded non vult to seven indictments for robbery and a month later sentences were pronounced, running consecutively for a total minimum of 20 years and maximum of 30 years. At no stage in the prosecution did he have the aid of counsel and this he alleges as ground for discharge from prison.
Counsel for the State argues that because the prisoner for ten years failed to demand release from prison, the reasons urged for his discharge should now be brushed aside. The earliest support for such a theory seems to be In re Tremper, 126 N.J. Eq. 276 (Ch. 1939). The vice chancellor in that case found that although the court which sentenced the *246 petitioner had lost jurisdiction of the cause and consequently that the conviction was void, yet the petitioner must remain in prison because he had delayed five years before asking to be released. The Court of Errors and Appeals held that the trial court had jurisdiction, that the imprisonment was lawful and so affirmed, but hinted no approval of the reasons on which Vice-Chancellor Buchanan counted. 129 N.J. Eq. 274 (1941). The vice-chancellor was followed by the Mercer County Court in In re Zee, 13 N.J. Super. 312 (1951), and again, while the order was affirmed on the merits, the subject of delay was ignored, 16 N.J. Super. 171 (App. Div. 1951). The same County Court in In re Hodge, 17 N.J. Super. 198 (1951), refused to issue a writ of habeas corpus "because of the long and unexplained delay in applying for the writ."
The foundation of the late Vice Chancellor Buchanan's conclusion that unexplained delay should lead to denial of a writ of habeas corpus, was his strong opinion that issuance of the writ was always a matter of discretion. He said that a prisoner's right to the writ is not established simply by
"showing, prima facie, a reasonable possibility that the court, upon the issuance of the writ and the subsequent inquiry and hearing thereunder, would conclude that the sentencing court did in fact lack jurisdiction. * * * The court is required to determine, in its sound judicial discretion, whether under all the circumstances which the court has before it on the application in the particular case, the writ ought to be issued as a matter of justice,  all things considered."
Starting with that premise, he upheld the State's contention that "because of their long and unexcused delay, during which witnesses on the part of the State may have died or otherwise become unavailable or their memories dimmed, they (the petitioners) are not now entitled as a matter of justice and right, to have their claim entertained and passed upon." And he stated his conclusion "that an application of this kind, made only after more than four years and a half from the time of sentence, ought not to be entertained, at least in the absence of special circumstances."
We think that the discretion of the court on application for *247 habeas corpus is not so broad as In re Tremper indicates. Our Habeas Corpus Act, modeled on the famous statute of 31 Car. II, c. 2, for many years provided that if the chancellor or any justice of the Supreme Court "shall deny any writ of habeas corpus by this act required to be granted, being moved for as aforesaid, they shall severally forfeit to the prisoner or party grieved the sum of one thousand four hundred dollars to be recovered in manner aforesaid." Pat. 168, § 10. While this penal clause has been omitted since the revision of 1874, that revision as well as the Revised Statutes of 1937 flatly commanded the court to "grant such writ without delay, unless it shall appear from the petition itself, or from the documents annexed, that the party applying therefor is, by the provisions of this act (chapter), prohibited from prosecuting such writ." Rev. 1877, p. 468, and R.S. 2:82-16. Cf. N.J.S. 2A:67-17. Even though no application is made, the court is required to issue a writ when the court "shall have evidence from any judicial proceeding had before them that a person within this state is illegally confined and restrained of his liberty." R.S. 2:82-3 and N.J.S. 2A:67-3. The statute is "liberally construed so as to secure, as far as possible, the liberty of the citizen." R.S. 2:82-1 and N.J.S. 2A:67-1.
"The writ of habeas corpus is a writ of right when reasonable cause is shown, but not a writ of course. 39 C.J.S., Habeas Corpus, § 6." In re Gottsmann, 141 N.J. Eq. 271 (E. & A. 1948). And such was Blackstone's opinion: "If a probable ground be shown that the party is imprisoned without just cause, the writ of habeas corpus is then a writ of right, which `may not be denied, but ought to be granted to every man that is committed, or detained in prison or otherwise restrained, though it be by the command of the king, the privy council, or any other.'" 3 Blacks. Comm. 133. As pointed out by Judge Jacobs, "Although our decisions state that the writ of habeas corpus is issuable in the discretion of the court (In re Van Winkle, 3 N.J. 348, 355 (1950)), they recognize that when proper cause is shown, *248 the issuance of the writ is a matter of right." State v. Ballard, 15 N.J. Super. 417 (App. Div. 1951). And in that case, the Appellate Division determined that the allegations of the petition were legally sufficient to "require hearing thereon" and therefore reversed the refusal by the County Court to grant the writ.
When we look beyond the bounds of New Jersey, we find that the Criminal Court of Appeals of Oklahoma, following the doctrine of In re Tremper, has held in at least one case, Ex parte Ray, 87 Okl. Cr. 436, 198 P.2d 756 (1948), that the discharge of the prisoner may be refused where delay in applying for the writ has been so great that upon a retrial the state would be unable to present evidence to establish the alleged crime. To the same effect is the decision of the Pennsylvania Superior Court in Com. ex rel. Quinn v. Smith, 144 Pa. Super. 160, 19 A.2d 504 (1941). See also the opinion of a minority of the judges of the Supreme Court of Ohio, In re Levenson, 154 Ohio St. 278, 95 N.E.2d 760 (1950). On the other hand, the justice sitting in Albanese v. Hunt, 177 Misc. 151, 130 N.Y.S.2d 137 (Sup. Ct. 1943) held that a delay of 14 years did not bar discharge. And while the Appellate Division (266 App. Div. 105, 41 N.Y.S.2d 646) reversed on another point, it concurred in the holding that laches did not prevent relief: "If his (prisoner's) contention is well taken, then he is entitled, even at this late date, to apply by means of habeas corpus for his release on the ground that he is illegally held in custody." Affirmed 292 N.Y. 528, 54 N.E.2d 379 (Ct. App. 1944). And the same conclusion was reached by the California District Court of Appeals in Jones v. Heinze, 88 Cal. App.2d 167, 198 P.2d 520 (1948), where the state's attorney suggested that the discharge of the prisoner after the lapse of 23 years would make a travesty upon justice and would establish a bad precedent. The court said:
"Surely preservation of the historical guarantees of the Constitution can never establish a dangerous precedent, and a travesty upon justice under the circumstances of this case could result only from *249 the failure of this court to adhere to such fundamental guarantees. The mere fact that it may be difficult or inconvenient to re-try the case after the lapse of so many years cannot justify a denial of the writ to correct the original failure of the trial court in the strict adherence to its mandatory constitutional duty."
And our own Appellate Division, in State v. Ballard, 15 N.J. Super. 417 (1951), held that the lapse of 12 years since the conviction, was not a sufficient reason for denial of the writ without a hearing. Compare Rule 2:7-13 that permits the correction of an illegal sentence at any time. State v. Weeks, 6 N.J. Super. 395 (App. Div. 1950); State v. Janiec, 6 N.J. 608; certiorari denied 341 U.S. 955, 71 S.Ct. 1007, 95 L.Ed. 1376 (1951). The correction was made in one of these cases, five years after the original sentence was pronounced, and in the other case, eight years after.
In our opinion, delay in petitioning for relief is not a sound reason for denying relief on habeas corpus. The longer the unlawful imprisonment, the greater the wrong that the prisoner has suffered, and the stronger, not the weaker, are the reasons for judicial interference. If, indeed, the judgment is void, the prisoner is still presumed to be innocent. This presumption is no slight matter, but is one of the great principles embedded in our system of justice, and an essential of due process of law. Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943). That the State may now be unable to present evidence of the prisoner's guilt is no better reason for keeping him in prison, than it would be for keeping in prison without trial any suspected person whom the State is unable to prove guilty.
Petitions for habeas corpus are so numerous and in most cases are so frivolous, that judges are tempted to set up obstacles to hinder the use of the writ. But it is a tendency that must be resisted. We must repeatedly remind ourselves of the function and transcendent importance of the writ of habeas corpus. It is the judicial means whereby a man who *250 is unlawfully kept captive, regains his freedom. "It goes in favor of the meanest criminal if illegally confined and to the highest official exercising the power of confinement, and relieves against illegal restraint by order of the highest authority." In re Stegman, 112 N.J. Eq. 72 (Ch. 1932). We cannot wisely tolerate any weakening of this safeguard of individual liberty.
In most habeas corpus cases, the prisoner is held pursuant to what seems to be the judgment of one of our county courts. The proceeding is a collateral attack on the judgment. Since our statute, R.S. 2:82-13b, now N.J.S. 2A:67-14b, like the common law, denies the benefit of the writ to a person imprisoned on the final judgment of a competent tribunal, the prisoner necessarily takes the position that what seems to be a final judgment is void and in fact no judgment. In re Friedlander, 135 N.J. Eq. 71 (Ch. 1944). Sometimes the invalidity of the judgment is made apparent by a study of the record, while in other cases the judgment record on its face is valid and the attack depends on matters that can be proved only by the testimony of witnesses. Here, the prisoner has the burden of proof. It may happen that the lapse of several years, with a resulting inability to find the necessary witnesses, or a dulling of memory, may prevent the prisoner from establishing to the satisfaction of the court the facts that render the judgment void. If the court is doubtful as to these facts, it will not discharge the prisoner. Ex parte Workman, 89 Okl. Cr. 289, 207 P.2d 361 (Okla. Crim. App. 1949); Com. ex rel. Vovanski v. Smith, 114 Pa. Super. 547, 19 A.2d 739 (Pa. Super. 1941). It is only in some such way that delay prejudices the applicant for habeas corpus.
The substantial ground for attack on the conviction of Cynkowski is that he was denied counsel, contrary to Article I of our Constitution, a subject considered with much care in State v. Ballard, supra, and State v. Gladstone, 17 N.J. Super. 467 (App. Div. 1952). Where the circumstances make it unfair to accept a plea of guilty which is offered *251 without the advice of counsel, or to put the accused to trial without counsel, then the resulting conviction is void. Among the circumstances that must be considered is the "ignorance, youth or other incapacity of the defendant." Gibbs v. Burke, 337 U.S. 773, 69 S.Ct. 1247, 93 L.Ed. 1686 (1949). In the appeal before us, the petitioner was 21 years old at the time he pleaded. He had been previously convicted, when he was 18 years old, of stealing an automobile and sentenced to the Rahway Reformatory, and the following year, for the same kind of offense, he was sentenced to the Essex County Penitentiary for 18 months. He did not ask that counsel be assigned to him. There is nothing to indicate that he was ignorant of the meaning of the charge for which he stood indicted or that he did not fully understand the effect of his plea, or that able counsel would have advised him to plead not guilty. We find in the present instance no impropriety in the acceptance of the plea. Because of this conclusion and because the other reasons for discharge presented by the prisoner are clearly without merit, the order is
Affirmed.
EASTWOOD, S.J.A.D. (concurring).
I concur in the result attained by Judge Bigelow's opinion. However, I find myself in disagreement with that portion which asserts "* * * delay in petitioning for relief is not a sound reason for denying relief on habeas corpus. The longer the unlawful imprisonment, the greater the wrong that the prisoner has suffered, and the stronger, not the weaker, are the reasons for judicial interference." Undue delay in itself should not be considered as a barrier to the granting of the writ. In fact, in all cases, regardless of the element of time in applying for the writ, if there is any uncertainty, the writ should be issued and the defendant be given a hearing, so that he may have his "day in court." It appears that the rule laid down by the opinion is unqualified. While there should be no relaxation of the enforcement of constitutional guaranties to one accused of crime and his rights flowing *252 therefrom must at all times be assured and protected, the interests and safety of the citizens of the State are of equal importance in connection with the enforcement of our criminal statutes. The opinion here asserts: "The longer the unlawful imprisonment, the greater the wrong that the prisoner has suffered and the stronger, not the weaker, are the reasons for judicial interference." The question arises immediately, who is chargeable with the delay that may have occurred in the prisoner's initial action to test the validity of his conviction and confinement? The remedy is available at all times from the very minute of his conviction and confinement. Should he, therefore, be given his freedom in the event that he succeeds in establishing that his conviction and confinement were violative of the constitutional guaranty of "due process," if it also appears that his delay in prosecuting the writ is unreasonable under the circumstances and the State, by reason of the death or absence or inability to locate necessary witnesses or the possible loss of recollection of the witnesses concerning the facts of the crime, is not in a position to retry the defendant? I think not. But, the argument is made, the prisoners are usually laymen and they are ignorant of their legal rights and procedure; therefore, the time element, regardless of the length thereof, should not militate against them. I am rather doubtful of the soundness of that assertion. During the last several years, practically all of the habeas corpus proceedings in question have emanated from inmates of our penal institutions whose records indicate that they are the "professional type," having records of numerous criminal convictions. One gains the impression that they have become schooled in the knowledge of their legal rights and how to proceed to enforce them. I concede, however, in a given case, where it is established that the prisoner's constitutional rights have been violated and where the delay in seeking relief has not been unreasonable and where the State is still in a position to retry him, he is entitled to relief under habeas corpus proceedings. State v. Griffith, 14 N.J. Super. 77 (App. Div. 1951).
*253 Cases tending to support the view hereinabove expressed include the cases cited by Judge Bigelow, viz.: In re Tremper, 126 N.J. Eq. 276 (Ch. 1939), affirmed 129 N.J. Eq. 274 (E. & A. 1941); Ex parte Ray, 87 Okl. Cr. 436, 198 P.2d 756 (Okl. Crim. App. 1948); Com. ex rel. Quinn v. Smith, 144 Pa. Super. 160, 19 A.2d 504 (Pa. Super. 1941); minority opinion In re Levenson, 154 Ohio St. 278, 95 N.E.2d 760 (Ohio Sup. 1950). In the case of Com. ex rel. Quinn v. Smith, supra, the court held that where 15 1/2 years had elapsed before the prisoner sought release from imprisonment on the ground that he was not represented by counsel at the trial and his delay in making the
"application until such a great length of time had elapsed that the Judge who presided at the trial has no recollection of what occurred there, as respects the relator being represented by counsel, or requesting the appointment of counsel, or refusing or waiving the appointment of counsel for him, and five of the six witnesses for the prosecution at the trial have died or cannot be found, and the sixth has no recollection of the trial of the case, there being no stenographic notes or notes of testimony of the trial, convicts him of such laches as to call for a refusal of the prayer of his petition, and prevents his discharge from confinement."
See also 146 A.L.R., at p. 430, Habeas Corpus, Effect of Laches; 39 C.J.S., Habeas Corpus, § 76, p. 619. In the opinion of Judge Taft of the Supreme Court of Ohio, In re Levenson, supra, he cites the following cases in support thereof, viz:
"See In re Tremper, 126 N.J. Eq. 276, 8 A.2d 279, affirmed on other grounds, 129 N.J. Eq. 274, 19 A.2d 342; Commonwealth, ex rel. Quinn v. Smith, Warden, 144 Pa. Super. 160, 19 A.2d 504; Ex parte Snow, 84 Okl. Cr. 423, 183 P.2d 588; Ex parte Matthews, 85 Okl. Cir. 173, 186 P.2d 840, certiorari denied, Matthews v. Burford, 333 U.S. 858, 68 S.Ct. 728, 92 L.Ed. 1138; Ex parte Motley, 86 Okl. Cr. 401, 193 P.2d 613; Ex parte Ray, 87 Okl. Cr. 436, 198 P.2d 756; Ex parte Workman, [89 Okl. Cr. 289], 207 P.2d 361; Ex parte Cole, [89 Okl. Cr. 380], 208 P.2d 193; Ex parte Hall, Okl. Cr. App., 215 P.2d 587; and 39 C.J.S., Habeas Corpus, § 76, p. 620."
*254 Much is to be said in favor of the well-reasoned opinion of Vice-Chancellor Buchanan in In re Tremper, supra. His language therein is so pertinent, logical and cogent it deserves repetition. I quote:
"True it is that it is the public policy of this state that all due safeguards against injustice, and all constitutional rights, should be preserved to persons accused of crime; and that a court, on habeas corpus, has the corresponding judicial responsibility of endeavoring to see to it that that policy is properly carried out. But it is equally true that it is the public policy of this state, and to the interest of its citizens, that those guilty of crime should not go unpunished; that there should not be undue litigation; and that where the state has provided for the person accused of crime, by means other than habeas corpus, all due and reasonable opportunities for him to obtain for himself the enforcement of the legal and constitutional rights to which he is entitled, he should not be permitted either to harass the state and its citizens by further repeated attempts by legal proceedings to litigate over again that which has been definitely determined against him, nor to endeavor to accomplish a fraud and imposition upon the state and its citizens under the guise of an effort to obtain the benefit of his legal and constitutional rights aforesaid after having had full and ample opportunity to obtain those benefits. * * *
The function, purpose and responsibility of a court, in cases involving the life or liberty of an individual, is concerned not merely with the rights and interests of the individual alone; it is equally concerned with the rights and interests of the citizens as a whole. It is true that this state has such an interest in the lives of its citizens that it will not permit a man to accomplish legal suicide by pleading guilty to first degree murder (see R.S. 2:138-3, and State v. Genz, 57 N.J.L. 459, 31 A. Rep. 1037); but it need scarcely be stated that the interest of the state in the lives of its citizens is also such that it endeavors to protect itself against the loss of such lives, by providing heavy punishment (even to execution) for murder.

* * * * * * * *
Obviously then, the public policy of this state, notwithstanding that it is concerned that an accused person shall have his legal rights preserved to him and shall not suffer punishment as the result of wrongful conviction or sentence (and so concerned to the extent that full opportunity is accorded for the redress of errors which were harmful to the accused even though no objection was made by him at the time,  R.S. 2:195-16, formerly 2 Comp. Stat. 1863, sec. 136), is nevertheless also concerned with the prevention of unduly delayed litigation and the avoidance of imposition upon the state as the result of possible reversals in appellate proceedings delayed for so long a time as to make it probable or reasonably possible that testimony or other evidence may have become unavailable,  concerned to such extent that it denies to one serving sentence of imprisonment, and who *255 has had full opportunity for a year to take appellate proceedings, any further opportunity (except in cases of newly discovered evidence) to have entertained by any court, any claim by him (not based on a claim of lack of jurisdiction) that he was wrongfully convicted and hence illegally imprisoned."
To literally follow the rule laid down by Judge Bigelow's opinion may well encourage prisoners to deliberately play a waiting game "to seek review on habeas corpus, until such time as the evidence on the part of the State should be, or might well become, impaired and they might consequently expect eventually to go free if the conviction and sentence were set aside." In re Tremper, supra.
The adoption of the rule advocated by this opinion, it seems to me, would assure fair treatment to a prisoner in the enforcement of his constitutional guaranties and protect the interests of the citizens of the State, as well.